**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | **Case No. 23-70028-EVR-11** |
| **CORP.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | |
| **CORP.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Adversary No. _____** |
| | § | |
| **RODOLFO PLASCENCIA, SR.** | § | |
| **and WNGU PROPERTIES, LLC** | § | |
| **Defendants** | § | |


<u>**COMPLAINT TO AVOID INVOLUNTARY AND PREFERENTIAL TRANSFERS**</u>

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. Bankruptcy Judge:

NOW COMES, GARCIA GRAIN TRADING CORP., the Debtor in the above-captioned case (the "Debtor" or "Garcia Grain"), and files this Complaint to Avoid Involuntary and Preferential Transfers against Defendants, RODOLFO PLASCENCIA, SR ("Plascencia") and WNGU PROPERTIES, LLC ("WNGU") (collectively "Defendants"), and for cause would show as follows:

<u>**PARTIES**</u>

1.     The Plaintiff in this action is the Debtor, Garcia Grain Trading Corporation (the "Plaintiff," the "Debtor" or "Garcia Grain"). Garcia Grain is a Texas corporation with its registered business address and mailing address at 101 N. Val Verde Rd. Donna,

Texas 78537-9561, and can be served through the undersigned attorneys or its registered agent, Octavio Garcia.

2.    Defendant, Rodolfo Plascencia, Sr., is an individual residing at 725 Cardinal Avenue, McAllen, Hidalgo County, Texas, 78504-2777, with his mailing address being 4121 N. 10th Street, Suite 125, McAllen, Texas 78504.

3.    Defendant, WNGU Properties, LLC is a limited liability company with its principal place of business and mailing address at 4121 N. 10th Street, Suite 125, McAllen, Texas 78504, and can be served through its registered agent Rodolfo Plascencia, Jr.

## JURISDICTION AND VENUE

4.    This Adversary Proceeding is brought pursuant to Bankruptcy Rule 7001 and arises under 11 U.S.C. § 548. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rule 7001(2).

5.    This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

6.    Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1409.

## BACKGROUND OF THE CASE AND FACTS

**Background**

7.    On July 26, 2022, Defendant, Rodolfo Plascencia, Sr., individually and derivatively on behalf of Garcia Grain Trading Corporation, entered into a Settlement Agreement and Mutual Release of Claims ("Settlement Agreement") with multiple parties, including Garcia Grain Trading Corporation, the Debtor in the above captioned bankruptcy proceeding.

8.    Defendant Rodolfo Plascencia, Sr. was an "insider" of the Debtor within the meaning of 11 U.S.C. § 101(31)(B) at the time of the Settlement Agreement and the subsequent

transfers made pursuant to the Settlement Agreement because he was a director, officer, and a person in control of the Debtor.

9.     At the time of the Settlement Agreement when the Debtor's obligation to transfer the property that is the subject of this Complaint to Defendant Rodolfo Plascencia, Sr. was incurred, the Debtor was either "insolvent" within the meaning of 11 U.S.C. § 101(32)(A) or became insolvent as a result of such transfers ("Transfers").

10.    Further, at the time transfers to Defendant Rodolfo Plascencia, Sr. ("Transfers") were made or such obligation was incurred, the Debtor was engaged, or was about to engage, in business or transactions with StoneX and Grainchain, Inc. for which any assets remaining with the Debtor was an unreasonably small amount of capital under the circumstances.

11.    At the time the Transfers were made or the obligation was incurred, the Debtor was in the process of incurring debts to StoneX and Grainchain, Inc. that would be beyond the Debtor's ability to pay as such debts matured. Those debts have eventually led to a claim by Grainchain, Inc. in an amount of approximately $8.1 million and a claim of StoneX in an amount approximately $20 million.

12.    The Debtor received less than a reasonably equivalent value in exchange for those Transfers.

**The Settlement Agreement**

13.    Under the Settlement Agreement, Defendant Plascencia released the claims he brought against multiple parties, including the Debtor, Garcia Grain Trading Corporation, and the principal of the Debtor, Octavio Garcia, in multiple lawsuits, in exchange for the following:

(1) Garcia Grain Trading Corporation paid Plascencia $200,000 and did not issue a 1099 for it or for any other consideration given to Plascencia;

(2) Plascencia was conveyed all rights, interests, title and interest to two properties described as "Property 1" and "Property 2" below, worth about $1,000,000 together;

(3) Plascencia transferred its interests in Alamo Grain, a Texas General Partnership, Garcia Grain Trading Corporation, PSG Products, LLC and Rio Bravo Imports, LLC back to the respective entities or to a party otherwise identified by Defendant; and

(4) Plascencia conveyed all rights, title, and interests in a property described as "Property 3" below.

14.     "**Property 1**" refers to the following property as defined in the Settlement Agreement: "6.65 acres, more or less, out of a 28.85 acre tract of land out of Lot 11, Block 12, Alamo Land & Sugar Company Subdivision Hidalgo, Texas, including any and all improvements including but not limited to any and all grain elevators and associated equipment." Testimony provided by the Debtor's side in the 341 Meeting, held on March 22, 2023, specified that this property included the Alamo Elevator (without grain).

15.     All of the funds for the purchase and acquisition of "Property 1" was wholly paid from the funds from Garcia Grain Trading Corporation and the equitable title to "Property 1" is held by Garcia Grain because it provided all of the consideration for the purchase of the property as well as for the operations of the Alamo Elevator by Garcia Grain. Moreover, the TDA license to operate the Alamo Elevator was held by Garcia Grain.

16.     On September 30, 2022, "Property 1" was transferred from Alamo Grain to Rodolfo Plascencia, Sr. (General Warranty Deed, Hidalgo County, Document Number 3384705), which was in turn transferred on January 6, 2023 by Rodolfo Plascencia, Sr. to Defendant, WNGU Properties, LLC (General Warranty Deed, Hidalgo County, Document Number 3410797).

17.    Defendant WNGU Properties, LLC is owned by Rodolfo Plascencia, Jr., a family member of Defendant Rodolfo Plascencia, Sr. Defendant Rodolfo Plascencia, Sr. was the initial transferee of "Property 1" and WNGU was the immediate transferee of him. For that reason, WNGU is liable to Plaintiff under 11 U.S.C § 550 and therefore named as Defendant in this lawsuit.

18.    "**Property 2**" refers to the following property as defined in the Settlement Agreement: "10.15 acres, more or less, consisting of Lot 27, Lion Lake, including any and all improvements." This Property is located in Hidalgo County. It was transferred by Baldemar Salinas Cantu and wife, Ruth Idalia Salinas to Rodolfo Plascencia, Sr.

19.    "**Property 3**" refers to the following property as defined in the Settlement Agreement: "All of plat of 20.22 acres out of Lot 28, the West 399.41 feet of Lot 29, and the North 50.00 feet of the old former canal right-of-way, LION LAKE SUBDIVISION, Hidalgo County, Texas (…)" and it is more fully described as indicated in Exhibit A to the Settlement Agreement. It was conveyed to Octavio Garcia.

20.    The parties to the Settlement Agreement are the following: (1) Rodolfo Plascencia, Sr., as Plaintiff, (2) Octavio Garcia; Baldemar Salinas Cantu; Garcia Grain Trading Corporation; PSG Products, LLC; Rio Bravo Imports, LLC; Alamo Grain, a Texas General Partnership; Val Verde Grain Holdings, a Texas General Partnership; International Earth Products, LLC; IEP Minerals, LLC; IEP Logistics, LLC; Paula Gabriela Garcia; and Diego Gonzalez, collectively as Defendants; (3) Rodolfo Plascencia, Jr.; (4) Gabriela Balli Garcia; and (5) Patricia Ruiz Plascencia.

21.    The subject matter of the Settlement Agreement is the mutual release of all claims in the following five (5) lawsuits:

**Lawsuit No. 1.** The lawsuit instituted by Plascencia against the Defendants (to the Settlement Agreement) in the 275th Judicial District Court of Hidalgo County, Texas, in Cause No. C-4763-17-E, and Defendants' counterclaim and a Third-Party Petition against Plascencia ("Lawsuit No. 1");

**Lawsuit No. 2.** The lawsuit instituted by Plascencia against Octavio Garcia in the 398th Judicial District Court of Hidalgo County, Texas in Cause No. C-0562-19-I ("Lawsuit No. 2");

**Lawsuit No. 3.** The lawsuit instituted by Plascencia against Baldemar Salinas in the 398th Judicial District Court of Hidalgo County, Texas in Cause No. C-0563-19-I ("Lawsuit No. 3")

**Lawsuit No. 4.** The lawsuit instituted by Plascencia against Octavio Garcia and Baldemar Salinas Cantu in the 275th Judicial District Court of Hidalgo County, Texas in Cause No. C-0565-19-E ("Lawsuit No. 4")

**Lawsuit No. 5.** The lawsuit instituted by Ruiz Plascencia against Balli Garcia and Baldemar Salinas Cantu in the 332nd Judicial District Court of Hidalgo County, Texas in Cause No. C-0566-19-F ("Lawsuit No. 5")

**The Transfers**

22. The Transfers constituting the subject matter of this Complaint are: (1) the transfer of "Property 1" by Alamo Grain to Defendant Rodolfo Plascencia, Sr. (the initial transferee), which was subsequently transferred by Rodolfo Plascencia Sr. to WNGU Properties, LLC (the immediate transferee); (2) the transfer of $200,000 cash by the Debtor to Rodolfo Plascencia, Sr. pursuant to the Settlement Agreement for the settlement of the five Lawsuits (Lawsuit Nos. 1 through 5 described above); and  (3) the monthly payments of $15,000 made by the Debtor to Rodolfo Plascencia, Sr. described below.

23. During the pendency of the five Lawsuits, an arrangement was made during the mediation (which later eventually resulted in the signing of the Settlement Agreement by the Debtor) resulted in a separate obligation of the Debtor to make monthly payments of $15,000 to Rodolfo Plascencia, an insider of the Debtor. On information and belief, such payments started in November 2017 and continued until June 2022,

for approximately five (5) years and resulted in direct payments to Rodolfo Plascencia, Sr. of at least $825,000 or more in cash. Those payments were made to or for the benefit of Rodolfo Plascencia, Sr. for or on account of an antecedent debt owed by the Debtor before such Transfers were made; they were made when the Debtor was insolvent; and they enabled Rodolfo Plascencia, Sr. to receive more than he would receive if the Petition was filed under Chapter 7; the transfers have not been made, and he received payment of such debt to the extent provided by the provisions of tile 11 of the Bankruptcy Code.

24.     Together, all of these transactions are generally referred to herein as "Transactions" regardless of whether the Debtor seeks to avoid all or any part of them under 11 U.S.C. § 547 as a Preferential Transaction or under 11 U.S.C. § 548 as a Fraudulent Transaction, as described in more detail below.

**Debtor Received Less Than a Reasonably Equivalent Value for the Transfers**

25.     The Debtor received less than a reasonably equivalent value in exchange for those Transfers whether made during the pendency of the Lawsuit Nos. 1 through 5 or made pursuant to the resulting Settlement Agreement.

26.     Short of conducting a mini-trial on the merits of the released claims in Lawsuit Nos. 1 through 5, it is not possible to speculate on how fair the consideration paid by Garcia Grain Trading Corporation really was in exchange for avoiding litigation that it would have otherwise faced, and how risky, lengthy and costly such litigation would have been—in other words, to assess the exact dollar value of the consideration that Garcia Grain received from Defendant Plascencia. However, even without knowing the exact dollar value of the consideration, based on the amount in controversy in the settled

lawsuits, it is still apparent that there is a large discrepancy between the value that Garcia Grain had to give up under the Settlement Agreement in exchange for the value it received from Plascencia.

27. Moreover, the settlement was not an arm's length transaction because the majority of the parties were related to each other or had a history of personal and business/employment relationships with each other. Defendant Rodolfo Plascencia, Sr. is one of the two founding directors of Garcia Grain Trading Corporation, along with Octavio Garcia, and was an officer or director of Garcia Grain at the time of the settlement. Some or all of the companies that were parties to the Settlement Agreement were partially or fully owned by the other parties to the Settlement Agreement, including Garcia Grain. Several of the family members of Rodolfo Plascencia, Sr. (such as Rodolfo Plascencia, Jr. and Patricia Ruiz Plascencia) and Octavio Garcia (such as Paula Gabriela Garcia) were also parties to the Settlement Agreement.

28. Given that Rodolfo Plascencia, Sr., as an insider of Garcia Grain, knew or should have known of Garcia Grain's financial problems and insolvency and, therefore, he was on notice that Garcia Grain was insolvent, he did not receive the transferred property (which consists of the "Property 1" defined above plus $200,000 in cash) in good faith. Moreover, he did not give a reasonably equivalent value for the property.

29. Contemporaneously with the Settlement Agreement, on July 26, 2022, Rodolfo Plascencia, Sr. and the Debtor signed a Redemption of Shares and Release Agreement whereby Plascencia withdrew from the Debtor and conveyed all of his shares in the corporation (which amounted to 35% of the outstanding shares of the Debtor) to the Debtor. Considering these and all other all circumstances surrounding the settlement

and the amounts of transfers made under the Settlement Agreement, the transfers deviate from the standard business practices of the Debtor.

30.   The transfer of the $200,000 cash and Property 1 (worth about $850,000) from the Debtor to Defendant Plascencia happened at a time when the Debtor was heavily in debt and insolvent.

31.   Alternatively, the Debtor became insolvent as a result of the transfers made to Plascencia.

### COUNT ONE – Claim Pursuant to 11 U.S.C. § 548(a)(1)(B) as well as Tex. Bus. & Com. Code § 24.005(a)(2)

**A.   Transfers Made Pursuant to the Settlement Agreement**

32.   Plaintiff incorporates the allegations and assertions of fact contained in paragraphs 1 through 31 above and elsewhere in this Complaint.

33.   To establish its claim against Defendants to avoid the Settlement Agreement as an involuntary transfer, an essential element that Plaintiff needs to show, under both the Bankruptcy Code and the Texas and Business Commerce Code, is that the Debtor did not receive reasonably equivalent value in exchange for the obligation incurred or transfer made. 11 U.S.C. § 548(a)(1)(B); Tex. Bus. & Com. Code § 24.005(a)(2); *see In re Victory Medical Center Mid-Cities, L.P*, 601 B.R. 739, 748 (2019).

34.   Reasonably equivalent value means "the debtor has received value that is substantially comparable to the worth of the transferred property." *In re TransTexas Gas Corp*., 597 F.3d 298, 306 (5th Cir. 2010) (quoting *BFP v. Resolution Trust Corp*., 511 U.S. 531, 548, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)).

35.   Although "[t]here is no set minimum percentage or monetary amount necessary to constitute reasonably equivalent value," *In re Calvillo*, 263 B.R. 214, 220 (W.D. Tex.

2000), it is clear that, as a result of the Transfers made pursuant to the Settlement Agreement, the Debtor's ability to keep its business in operation has suffered greatly. There is no question that the size of Debtor's estate would have been significantly bigger had the property including the Alamo Elevator ("Property 1") and the $200,000 cash not been transferred to Plascencia; therefore, there would have been a larger amount of assets for creditors to recover.

36.     Debtor made the Transfers pursuant to the Settlement Agreement to Defendant Plascencia, an insider of the Debtor, within one year before filing its petition for bankruptcy and while the Debtor was insolvent; or alternatively, the Debtor became insolvent as a result of these Transfers.

37.     From the standpoint of creditors, the value that the Debtor received in exchange for the transferred property is less than a reasonably equivalent value because it depleted the Debtor's estate and resulted in Debtor's insolvency or was made while the Debtor was insolvent, or alternatively, the Debtor became insolvent as a result of these Transfers.

38.     Thus, the Plaintiff asserts that the transfers involuntarily conveying the above-referenced Property 1 to Defendant Plascencia (and, through Plascencia, to the immediate transferee, WNGU) and the $200,000 cash transferred to Plascencia should be avoided pursuant to the provisions of 11 U.S.C. §§ 548(a)(1)(B) and § 550 as well as TEX. BUS. & COM. CODE § 24.005(a)(2).

**B.  Transfers Made Prior to the Settlement Agreement**

39.     Plaintiff incorporates the allegations and assertions of fact contained in paragraphs 1 through 31 above and elsewhere in this Complaint.

40.     Debtor made Transfers of monthly payments of $15,000 to Rodolfo Plascencia, Sr., an insider of the Debtor, prior to or separately from the Settlement Agreement to pay off debt(s) that formed the basis of the five Lawsuits.

41.     On information and belief, such Transfers were made between November 2017 to June 2022. The portion of those Transfers made between February 2019 (four years prior to the Petition Date) through February 2023 would cover about at least 40 months and would add up to a total amount of approximately $600,000 or more.

42.     Debtor was insolvent at the time such Transfers were made.

43.     The Debtor received less than a reasonably equivalent value for the Transfers and the Transfers resulted in diminution of the Debtor's estate.

## COUNT TWO – Claim Pursuant to 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1)

### A.  Transfers Made Pursuant to the Settlement Agreement

44.     In addition or in the alternative, pursuant to 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1), Plaintiff asserts that the Transfers harmed the creditors of Garcia Grain Trading Corporation and were made within one year before filing its Petition for bankruptcy.

45.     In support of the portion of this claim with regard to the Transfers made pursuant to the Settlement Agreement, Plaintiff incorporates the allegations and assertions of fact contained in paragraphs 1 through 31 above and elsewhere in this Complaint.

46.     Further, the Debtor made such Transfers involuntarily and thereby hindered and delayed the creditors of Garcia Grain Trading Corporation.

47.     The transfers made by the Debtor to the Defendant Plascencia were made at a time when the Debtor were indebted to multiple creditors. The parties to the Settlement

Agreement, especially both Rodolfo Plascencia, Sr., the Defendant in this Complaint, and Rodolfo Plascencia, Jr., the principal of Defendant WNGO, either knew or should have known of Debtor's insolvency (or near insolvency) and its heavy indebtedness to its creditors.

48.   Thus, the Plaintiff asserts that the Defendant Plascencia's interest in the transferred property should be avoided pursuant to the provisions of 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1).

49.   The Transfers made pursuant to the Settlement Agreement with Defendant Plascencia evidence several of the criteria listed in TEX. BUS. & COM. CODE § 24.005(b) that courts consider in determining a violation of the statute, among other factors.

> **(1) the transfer or obligation was to an insider**, TEX. BUS. & COM. CODE § 24.005(b)(1):
>
> Rodolfo Plascencia, Sr. is an insider of the Debtor. Determination of non-statutory insider status, for purposes of § 24.005(a)(1) claims under the Texas Uniform Fraudulent Transfer Act (TUFTA), generally focuses on two factors: (1) closeness of relationship between transferee and debtor, and (2) whether transactions between transferee and debtor were conducted at arm's-length. *In re Essential Financial Education, Inc.*, Bkrtcy.N.D.Tex.2021, 2021 WL 1748202. Rodolfo Plascencia, Sr. is a founding director of the Debtor and was an officer and director of the Debtor for more than 20 years at the time of the Settlement Agreement. Most of the parties to the Settlement Agreement are related to the Debtor and/or to each other either as family members or as employees, agents, or otherwise. The transfers have not been conducted at arm's length.
>
> **(2) the debtor retained possession or control of the property transferred after the transfer**, TEX. BUS. & COM. CODE § 24.005(b)(2)
>
> **(3) the transfer or obligation was concealed**, TEX. BUS. & COM. CODE § 24.005(b)(3)
>
> **(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit**, TEX. BUS. & COM. CODE § 24.005(b)(4):
>
> The Debtor and its principal, Octavio Garcia; Mr. Garcia's wife, Gabriela Garcia; as well as some of the employees, officers, and/or agents of the Debtor, were in several lawsuits initiated by Rodolfo Plascencia, Sr., referred to as Lawsuit Nos. 1 through 5 above.

**(5) the transfer was of substantially all the debtor's assets**, TEX. BUS. & COM. CODE § 24.005(b)(5):

The property transferred by the Debtor pursuant to the Settlement Agreement constituted a significant portion of the Debtor's assets.

**(6)  the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred**, TEX. BUS. & COM. CODE § 24.005(b)(8):

The value received by the Debtor under the Settlement Agreement, namely, the release of the claims in the above-mentioned lawsuits, was not reasonably equivalent to the value of the assets transferred to Rodolfo Plascencia, Sr.

**(7) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred**, TEX. BUS. & COM. CODE § 24.005(b)(9):

Garcia Grain Trading Corporation was insolvent at the time of the Settlement Agreement or became insolvent shortly after the obligation to transfer the property to Rodolfo Plascencia, Sr. was incurred. Further, Rodolfo Plascencia, Sr. knew of Garcia Grain's financial troubles and actual or imminent insolvency, since he was an officer of Garcia Grain at the time of the Settlement Agreement for over twenty years.

**(8) the transfer occurred shortly before or shortly after a substantial debt was incurred**, TEX. BUS. & COM. CODE § 24.005(b)(10):

The Debtor was heavily in debt when the Settlement Agreement and the surrounding transactions occurred.

**(9) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor**, TEX. BUS. & COM. CODE § 24.005(b)(11).

The Debtor transferred the essential assets of the business to an insider, i.e., founding director, Rodolfo Plascencia, Sr. The Alamo Elevator (the "Property 1" identified above) transferred to Rodolfo Plascencia, Sr. was an integral part of the Debtor's grain storage business in the Rio Grande Valley area.

50. There was no legitimate business purpose for any of these Transfers.

51. The Settlement Agreement between the parties as well as the Transfers deviated from standard business practices of the Debtor. Since the Debtor has been in grain storage business for decades, giving away an entire grain elevator to a departing officer, Rodolfo Plascencia, Sr., who could either be a potential rival or could sell the elevator to a business rival of the Debtor, did not make business sense. In fact, Defendant

Rodolfo Plascencia, Sr. immediately transferred Property 1 to Defendant WNGU, which is owned by his family member, Rodolfo Plascencia, Jr.

52.    For the reasons stated above, the transfers conveying the above-referenced Property 1 to Defendant Plascencia (and, through Plascencia, to the immediate transferee, WNGU) and the $200,000 cash transferred to Plascencia should be avoided pursuant to the provisions of 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1).

**B. Transfers Made Prior to the Settlement Agreement**

53.    In support of the portion of this claim with regard to the Transfers made prior to the Settlement Agreement, Plaintiff incorporates the allegations and assertions of fact contained in paragraphs 1 through 31 above and elsewhere in this Complaint.

54.    The Debtor made such Transfers involuntarily and in a manner that harmed the creditors of Garcia Grain Trading Corporation, and such intent is imputed to it by virtue of the surrounding circumstances of the Settlement Agreement.

55.    The Transfers made by the Debtor to Defendant Plascencia were made at a time when the Debtor was heavily indebted to multiple creditors. Despite the fact that Rodolfo Plascencia, Sr., an insider of the Debtor, whose knowledge of the Debtor's insolvency or heavy indebtedness to its creditors is imputed to him as an officer of the Debtor, pressed the Debtor to make monthly payments of $15,000 to pay off loans that formed the basis of the five (5) Lawsuits that were eventually settled by the Settlement Agreement. Moreover, prior to the Settlement Agreement, the Debtor had to pay a substantial amount of money (approximately $600,000 during the four years prior to the Petition Date) which was separate and in addition to the Transfers made pursuant

to the Settlement Agreement.

56.     The Transfers made prior to and separately from the Settlement Agreement also implicate several of the criteria listed in TEX. BUS. & COM. CODE § 24.005(b) discussed above.

57.     Thus, the Plaintiff asserts that the Transfers made prior to and separately from the Settlement Agreement should be avoided pursuant to the provisions of 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1).

**<u>COUNT THREE - Claim Pursuant to 11 U.S.C. § 547</u>**

58.     In addition to and in the alternative to all other counts, <u>with regard to all Transfers made within one year before the Petition Date</u>, Plaintiff asserts that the Debtor made such Transfers to or for the benefit of Rodolfo Plascencia, Sr., an insider of the Debtor, for or on account of antecedent debt and made those Transfers when the Debtor was insolvent, and asks the Court to avoid those Transfers as "preferential transfers" pursuant to 11 U.S.C. § 547.

59.     In support of this claim, Plaintiff incorporates the allegations and assertions of fact contained in paragraphs 1 through 31 above and elsewhere in this Complaint.

60.     The Transfers made within one year before the Petition Date that the Plaintiff seeks to avoid as preferential transfers are: (1) the Transfer of "Property 1" by Alamo Grain to Defendant Rodolfo Plascencia, Sr. pursuant to the Settlement Agreement, which was subsequently transferred by Rodolfo Plascencia Sr. to WNGU Properties, LLC; (2) the transfer of $200,000 cash by the Debtor to Rodolfo Plascencia, Sr. pursuant to the Settlement Agreement; and (3) the portion of the monthly payments of $15,000 made by the Debtor to Rodolfo Plascencia, Sr. that fall between the prescribed time period

under 11 U.S.C. § 547.

61.     The Transfers sought to be avoided as "preferential transfers" were made for or on account of an <u>antecedent debt</u> that formed the basis of the five Lawsuits (Lawsuit Nos 1 through 5). The Debtor tried to pay off that antecedent debt through $15,000 monthly payments to Rodolfo Plascencia, Sr. during the negotiations and the debt was eventually extinguished by the Settlement Agreement in exchange of "Property 1" and the $200,000 cash payment to Rodolfo Plascencia, Sr.

62.     On information and belief, the monthly payments of $15,000 were paid between November of 2017 and June of 2022. The total amount of such Transfers that could be considered a "preferential transfer" under the Code section cover the months of February 2022 through June of 2022 and add up to approximately $75,000.

63.     In addition, "Property 1" and $200,000 were also transferred to Rodolfo Plascencia, Sr. during one year before the Petition Date.

64.     The Debtor was insolvent at the time of the Transfers and the Transfers enabled Rodolfo Plascencia, Sr. to receive more than he would have received if this case were a case under chapter 7 of title 11 of the Bankruptcy Code; had the Transfers not been made; and Rodolfo Plascencia, Sr. received payment of such debt to the extent provided by the Bankruptcy Code.

65.     For the reasons stated above, those Transfers were preferential transfers within the meaning of 11 U.S.C. § 547; and the Debtor respectfully asks the Court to avoid those Transfers.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff and Debtor GARCIA GRAIN TRADING CORPORATION prays that citation be issued against the Defendants, RODOLFO PLASCENCIA, SR., and WNGU PROPERTIES, LLC and that Defendants be required to answer this Complaint, and that upon trial of this cause that the Court enter judgment against the Defendants, avoiding the involuntary and preferential conveyance of property and funds to Defendants pursuant to the provisions of 11 U.S.C. § 547, § 548(a)(1)(A) and (B), § 550, as well as TEX. BUS. & COM. CODE § 24.005(a)(1) and (2). The Plaintiff prays for such other relief as the Court deems just and equitable.

Dated: May 26, 2023.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

/s/ David R. Langston
David R. Langston, SBN: 11923800
Southern District Bar No. 9489
**Attorneys for the Debtor, Garcia Grain Trading
Corp.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Reply was served on the following parties in interest via ECF and/or regular U.S. Mail on this 26th day of May, 2023:

1.      Garcia Grain Trading Corp.
Attn: Octavio Garcia
101 N. Val Verde Rd.
Donna, TX 78537
***Debtor***

2.      Andrew Jimenez
U.S. Trustee's Office
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476

3.      Shelby Jordan
Jordan & Ortiz, P.C.
500 North Shoreline Drive, Suite 900
Corpus Christi, TX 78401
***Counsel for Unsecured Creditors Committee***

4.      All parties receiving notice via ECF in this case.

/s/ David R. Langston_____
David R. Langston