## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## <u>MCALLEN</u> DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GARCIA GRAIN TRADING CORP.,** | § | **CASE NO. 23-70028** |
| **Debtor** | § | **Chapter 11** |

---------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **GARCIA GRAIN TRADING CORP.,** | § | |
| **Plaintiff,** | § | |
| | § | **ADVERSARY NO.  23-07002** |
| **v.** | § | |
| | § | |
| **RODOLFO PLASCENCIA, SR., and** | § | |
| **WNGU PROPERTIES, LLC** | § | |
| **Defendant** | § | |

### DEFENDANTS' 12(b)(6) MOTION TO DISMISS

Defendants RODOLFO PLASCENCIA, SR (**"Plascencia"**) and WNGU PROPERTIES, LLC (**"WNGU"**) (collectively **"Defendants"**) move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state any claims on which relief can be granted.

### <u>Summary Of Arguments</u>

1.      The Complaint concedes that Property 1[1] was transferred by a non-debtor, rather than by the Debtor. Moreover, the Complaint fails to plead any plausible basis for "an **interest of the <u>debtor</u>** in" Property 1, which is an absolute requirement of 547, 548,

---
[1] "Property 1" refers to the same "Property 1" that is defined in the Complaint.

and TUFTA. As such, the Complaint has failed to state any claim under 547, 548, and TUFT against Property 1.

2.      The Complaint also fails to state *any* claim as to Property 2, given that, for example, the section of the Complaint that identifies the "Transfers constituting the subject matter of this Complaint" is devoid of any reference to Property 2. Alternatively, the Complaint concedes that Property 2 was transferred by non-debtors, rather than by the Debtor and the Complaint fails to plead any plausible basis for "an interest of the debtor in" Property 2.

3.      All the Plaintiff's preference claims are untimely filed and should be dismissed, as the alleged transfers occurred more than 90 days before the Petition Date and neither of the Defendants were "insiders" of the Debtor, on the date of the alleged transfers. Also, the Complaint fails to provide more than conclusory assertions regarding the "control or influence" tests for insider status.

4.      On the "reasonably equivalent value" element the Complaint is conclusory, at best. Additionally, the Complaint fails to comply with requirements set forth in this Court's prior case law (cited below), including that the Complaint fails to *"break down each transfer* and show that it did not receive reasonably equivalent value*"* (emphasis added).

5.      Plaintiff falls far short of its burden to plead that "Plaintiff made the transfers with actual intent to hinder, delay, or defraud its creditors." If anything, the Complaint actually does the opposite in that the Complaint states that the Debtor made the transfers "involuntarily," which indicates a *lack* of such "actual intent."

6.     The Complaint fails to identify any "creditor," much less satisfy the standards set forth in the existing case law of this Court requiring plaintiffs to identify creditors who would have standing to bring suit under TUFTA and into whose shoes the plaintiff could step for purposes of avoiding fraudulent transfers. The burden to do so requires the Plaintiff to identify such a creditor for *each* transfer; also the Plaintiff must indicate the dates of when such creditor(s)' claims (if any) arose, which is necessary given that Section 24.005(a) "requires Trustee to plead that there is a creditor with an allowable claim that arose *before or within a reasonable time of* the allegedly fraudulent transfer." (emphasis added)

7.     The Complaint fails to satisfy this Court's requirement (as set forth in this Court's prior case law) to "plead **how** the [transfers] diminished or depleted Debtor's estate." (emphasis added)

8.     The Complaint's "antecedent debt" allegations are conclusory and fail to satisfy case law requiring that a complaint address the "nature" of the debt and "amount" of the debt; the Complaint must, but fails to, do so as to *each* transfer for which preference is alleged. The Complaint also fails to satisfy the case law requiring the Complaint to plead facts that would allow the bankruptcy court to **"look behind" the settlement agreement** to discern the **nature** of the disputes (here, the Complaint concedes that multiple litigation cases that were settled vis-à-vis the Settlement Agreement – see Parag 23 and 25 of Complaint). The Complaint is silent regarding all of those required facts.

9.     The Petition is also beset by numerous other conclusory allegations (e.g., numerous allegations of "insolvency") that are mere hollow recitations of elements without

supporting facts and, thus, fail to survive a motion to dismiss, pursuant to case law cited *infra*.

### Legal Standard

10.     Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Fed.R.Bankr.P. 7012(b), allows for the assertion, by motion, of the defense that the opposing party has failed "to state a claim upon which relief can be granted." In resolving a Rule 12(b)(6) motion, a two-pronged approach is applicable. First, the Court must accept all well-pleaded factual allegations as true, see *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007). But "[t]hread-bare recitals of the elements of a cause of action, supported **by mere conclusory statements**, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id*.; see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they **plausibly** give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 669 (emphasis added)

### The Complaint fails to allege a plausible "interest of the debtor in" Property 1, which is fatal to the Plaintiff's 547, 548, and TUFTA claims as to Property 1.

11.     The Complaint alleges a transfer of Property 1.[2] However, the Complaint *concedes* that said conveyance was from a **non-**Debtor, rather than by the Debtor. Therefore, said conveyance is outside the purview of 547, 548, and TUFTA, all of which absolutely require "an interest of the debtor in" the property transferred. See case law:

---

[2] "Property 1" refers to the same "Property 1" that is defined in the Complaint.

- Regarding 547, **"To be a preference** there **must** be 'a **transfer** of an **interest of the debtor** in property'"** *In re Ramba, Inc.*, 437 F.3d 457, 459–60 (5th Cir. 2006)

- Regarding 548, "To show a claim for an avoidable **fraudulent conveyance**, the Court **must** identify 'a **transfer** of **an interest of the debtor** in property.'" *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007)

- Regarding TUFTA, to have **"standing"** to bring a **Texas state fraudulent transfer claim ("TUFTA")** with respect to a transfer, the Debtor must satisfy § 544(b), which expressly requires **the "transfer of an interest of the debtor in property"**. *See* § 544(b); see also, *Shipley Garcia Enterprises, LLC v. Cureton*, No. CIV.A. M-12-89, 2012 WL 3249544, at *10 (S.D. Tex. Aug. 7, 2012) ("SGE **would have no standing** to assert its TUFTA claim against Cureton **but for Title 11, § 544(b)**, which allows a trustee or debtor-in-possession to assert this state-law claim that otherwise could only be brought by a creditor.")

12.     Here, the Complaint fails to state a cognizable basis for "an **interest of the debtor** in [the subject] property," for the following reasons. In order to show "a transfer of an interest of the debtor in property," the Debtor **"bears the burden"** to establish that the real property at issue **would have been "in the bankruptcy estate"** "**had the transfer not occurred."** See case law:

- "A **debtor** has an **interest** in **property** **if** that property would have been part of the debtor's bankruptcy **estate** **had the transfer not occurred**." *In re Ramba, Inc.*, 437 F.3d 457, 459–60 (5th Cir. 2006)

- "A trustee **cannot avoid** transfers of property **unless the property would have been in the estate** and therefore available to the debtor's general creditors." *Id.*

- The Debtor "**bears the burden** of proving that the debtor had an interest in the transferred property." *Id.*

13.     **Additionally**, with respect to the TUFTA claim, the Plaintiff must **_also_** show that an "asset" was transferred, which, by definition, requires demonstrating transfer of "property **of a debtor".** See:

- Tex. Bus. & Com. Code § 24.002 ("'Asset' means property **of a debtor**")

- *In re Williams*, No. 19-32784, 2021 WL 1289672, at *19 (Bankr. S.D. Tex. Apr. 6, 2021) (**dismissing with prejudice** "fraudulent transfer cause of action pursuant to 11 U.S.C. § 544(b)(1) and TUFTA sections 24.005(a) and 24.006(a)–(b)" **because "the Property was not an "asset" under TUFTA."**)

14.     Applying the above standards to the Complaint's allegations regarding Property 1, the Complaint *concedes* that the conveyance at issue was from a Non-Debtor, not from the Debtor. *See* Paragraph 16 of Complaint ("'Property 1' was transferred **from Alamo Grain** to Rodolfo Plascencia, Sr.'") (emphasis added). And, in support of said statement, the Complaint cites to the "General Warranty Deed, Hidalgo County, Document Number 3384705". See also, Paragraph 22 of Complaint ("…the transfer of 'Property 1' **by Alamo Grain** to Defendant Rodolfo Plascencia, Sr…"); Paragraph 60 of Complaint ("…the transfer of 'Property 1' **by Alamo Grain** to Defendant Rodolfo Plascencia, Sr…"). It is undisputed that Alamo Grain is not the Debtor in the bankruptcy main case; the Court is asked to take judicial notice[3] of the filings in the main bankruptcy case (23-bk-70028). The Court is asked to take judicial notice thereof. The Debtor in the bankruptcy case is Garcia Grain. *Id*.

15.     It is true that the Complaint alleges that the Debtor has "equitable title" to Property 1. *See* Para 15 of Complaint. However, the Complaint fails to state a cognizable basis under Texas state law for equitable title, which is the controlling law. See:

- "The definition of **'an interest of the debtor in property'** is not defined by the Bankruptcy Code, but **left to state law**." *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007)

---

[3] *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (**"[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."**)

16.     Under Texas law, in order to have **"equitable title,"** the Debtor must have, at the time of the transfer, **the "present <u>right</u>" to "compel <u>legal</u> <u>title</u>" <u>to the Property</u>**. See:

> "The Trustee nevertheless argues that the Final Order gave Seiran equitable title to the Real Property. Under Texas law, '[a]n entity holds **equitable title** when **it possesses the present right to compel legal title.'** *Harris County Appraisal Dist. v. Primrose Houston 7 Housing, L.P.*, 238 S.W.3d 782, 787 (Tex.App.2007). Texas decisions supporting this proposition have not expressly defined the meaning of the phrase 'the present right to compel legal title.' Courts have, however, focused on **whether the complaining party has the <u>ability</u> <u>to directly control</u> who will ultimately have <u>legal</u> <u>title</u> to a given property**….The Trustee's argument that the holding in Primrose grants Seiran equitable title to the Real Property is off the mark. The Primrose holding **limits equitable title to instances where an entity can compel legal title to change hands <u>through its own actions</u>**. Primrose, 238 S.W.3d at 787. Here, Seiran could not itself compel Sharp to convey legal title back to Seiran. Indeed, that is why Seiran initiated the Texas Suit. **Without assistance from the Texas Court**, **Seiran could not compel legal title."**

*In re Great Gulfcan Energy Tex., Inc*., 488 B.R. 898, 912–13 (Bankr. S.D. Tex. 2013) (emphasis added)

17.     Applying the above here, with respect to Property 1, the Complaint **<u>fails</u> to allege or state any basis for** why, at the time of the transfer, the Debtor had a **"present <u>right</u> to compel <u>legal</u> <u>title</u>"** to Property 1. **Nor** does the Complaint allege or state any basis for the Debtor having an **"ability to <u>directly</u> control who will ultimately have <u>legal</u> title to"** Property 1. Nor does the **Complaint allege or state any basis for** the Debtor having any **"right"** to do all of those things, at the time of the transfer, **"through its <u>own</u> actions" "<u>without assistance from a court</u>"**.

18.     Although the Complaint alleges that the Debtor provided Alamo Grain with the funds to purchase Property 1 (which is not conceded), but even if that were true, it fails to state a basis for "equitable title" because it does not constitute the "present right to

compel legal title" to the Property. Simply providing funds to purchase a property does not invoke the "right" to "compel" "legal title." The Complaint also alleges that the Debtor "provided all consideration…for the operations of the Alamo Elevator by Garcia Grain" and that "the TDA license to operate the Alamo Elevator was held by Garcia Grain." Even if *arguendo* those allegations are proven to be true, they are irrelevant. *See* above Texas state law holding that one must, to establish "equitable title" have, at the time of the transfer, the "right to compel legal title" to the Property. Here, providing funds to operate a grain elevator situated on the property (even if true) and holding the license to operate said grain elevator (even if true) does not invoke the right to "compel" "legal title" to the Property. Thus, said "facts" fail to state a cognizable basis for "equitable title."

19.     Here, the Complaint does **not** allege common ownership or common officers as between Alamo Grain and the Debtor. (Furthermore, here, there is not *complete* overlap of shareholders or officers between the Debtor and Alamo Grain, even if the Complaint had alleged overlap, which it does not.) But, *even if* there was complete overlap here (which there is not) and even if the Complaint pled overlap (which it did not), the entities would still be treated as absolutely separate under Texas case law. See, generally, the following cases concluding that even 100% overlap of ownership and officers is not enough to disregard an entity's separateness. Although the following cases are not "equitable title" cases, they show Texas law's strong view of upholding the separateness of entities. See:

- **"[C]ommon ownership[,] even when combined with common corporate officers, does not demonstrate** that a parent and subsidiary are alter egos" *TMX Fin. Holdings, Inc. v. Wellshire Fin. Servs., LLC*, 515 S.W.3d 1, 8–9 (Tex. App.— Houston [1st Dist.] 2016, pet. abated)

▪ "[O]ur cases are clear that **one-hundred percent ownership and identity of directors and officers are, even together, an insufficient** basis for applying the alter ego theory to pierce the corporate veil.  Instead, we maintain the fiction that **an officer or director of both corporations can change hats and represent the two corporations separately, despite their common ownership.**" *United States v. Jon-T Chemicals, Inc.,* 768 F.2d 686, 691 (5th Cir. 1985)

20.     For the above reasons, equitable title is not plausibly pled here. In the **alternative**, the Complaint lacks the requisite specificity. Vague allegations (such as "Debtor provided the funds for the purchase"), even if providing funds could somehow impart equitable title (which is strongly denied), would still fall short due to the conclusory nature. See, e,g, *In re Caremerica, Inc*., 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (Allegations pled by plaintiff failed to meet the plausibility standard necessary to overcome motion to dismiss where insufficient facts supported plaintiff's conclusory contention that funds flowing through transferee originated with debtors.) Likewise, here, the Plaintiff makes the conclusory allegation that "Debtor provided the funds for the purchase".

21.     For the above reasons, the Complaint fails to state any cognizable basis for "an **interest of the debtor** in [the subject] property" as to Property 1, which is an absolute requirement of 547, 548, and TUFTA. As such, the Complaint fails to state a claim upon which relief can be granted with respect to Property 1.

### The Complaint fails to state *any* claim as to Property 2

22.     As for "Property 2," which is defined in the Complaint, the Complaint does not include Property 2 in any of the claims that are pled in the Complaint. See, e.g., Paragraph 22 of the Complaint, which lists the **"The Transfers constituting the subject matter of this Complaint"** and which is **devoid** of any reference to **Property 2**. In the

9

alternative, in the event that the Complaint pleads any claim as to Property 2 (which is denied), then the arguments set forth above with respect to Property 1 are incorporated by reference herein and restated with respect to Property 2. Said arguments (stated above) apply equally to (if not more so to) Property 2, given that the Complaint concedes that Property 2 was conveyed by non-debtors[4] (rather than by the Debtor) and given that the Complaint does not allege or state any basis for asserting an "interest of the Debtor" in Property 2.

**The Complaint is conclusory as to the "reasonably equivalent value" element, which is fatal to the Plaintiff's 548 and TUFTA claims.**

23.     As this Court previously observed, "A complaint, however, **must** do **more** than **just summarily** state there was 'less than a reasonably equivalent value in exchange.'" _In re All Tex. Elec. Contractors, Inc. V. NSPS Metals LLC_, No. 20-34656, 2022 WL 162786, at *7 (Bankr. S.D. Tex. Jan. 18, 2022) (emphasis added)

24.     Indeed, a plaintiff is required to, yet here failed to, state **"how"** the Debtor did not receive "reasonably equivalent value", as this Court observed in _In re Chapman_, 628 B.R. 512, 535 (Bankr. S.D. Tex. Mar. 5, 2021) (conclusory allegation that when debtor relinquished and disclaimed all interests in family trust in settlement agreement with stepchildren debtor received less than reasonably equivalent value deemed insufficient to support fraudulent transfer claims under Bankruptcy Code and Texas law)

> "[I]it is Plaintiff's responsibility to put the Defendants on proper notice as to **how** the Debtor did not receive reasonably equivalent value in return for relinquishment of his interest in the Chapman Family Trust. Plaintiff fails to

---

[4] _See_ Complaint at Para 18 ("[Property 2] was transferred **by Baldemar Salinas Cantu and wife, Ruth Idalia Salinas** to Rodolfo Plascencia, Sr.") (emphasis added)

> state sufficient facts to support claims under § 548 and Texas Business &
> Commerce Code § 24.006(a) with respect to reasonably equivalent value.

*Id*. at 535 (emphasis added)

25.     As applied here, the Complaint fails to state **"how"** the Debtor did not receive

"reasonably equivalent value". For example, the Complaint does not allege any facts as to

the value of the releases in the settlement agreement, etc. And, the Complaint concedes

that multiple litigation cases that were settled vis-à-vis the Settlement Agreement – see

Parag 23 and 25 of Complaint). Not only does the Complaint not address "how,"

**Paragraph 26** of the Complaint actually concedes that the Plaintiff has no idea what the

value is of the consideration exchanged. After conceding the same then, mysteriously, in

the next sentence, the Plaintiff speculates that it is "apparent that there is a large

discrepancy," (*id*.) which is extremely conclusory and, again, inconsistent with the prior

sentence. Nor does the Complaint address the value, at the time of the conveyance, of the

shares / interests in the Debtor, which Paragraph 13 of the Complaint admits that Plascencia

conveyed to the Debtor as part of the settlement.

***Moreover*, the Complaint fails to "*break down each transfer* and show that it did not
receive reasonably equivalent value".**

26.     In <u>*All Texas*</u>, this Court dismissed claims under §§ 548(a)(1)(B) and 550 and

observed, inter alia, that:

> Since **each transfer** of building equipment and material **is treated
> individually**, Plaintiff bears the burden of pleading that it did not receive
> reasonably equivalent value **for each transfer**. If Plaintiff received periodic
> payments from ACC, it likely received reasonably equivalent value on at
> least some of the transfers. Whether this is true or not, it was **Plaintiff's
> burden to break down each transfer and show that it did not receive**

**reasonably equivalent value**, and Plaintiff failed to do so. **Plaintiff has not satisfied the third element**.

*In re All Tex. Elec. Contractors, Inc. V. NSPS Metals LLC*, No. 20-34656, 2022 WL 162786, at *7 (Bankr. S.D. Tex. Jan. 18, 2022) (emphasis added)

27.     As applied here, the Complaint alleges multiple transfers. Yet, the Complaint fails to "break down each transfer" to show, as to each transfer, that the Plaintiff did not receive reasonably equivalent value. Accordingly, the Complaint fails to state a 548 or TUFTA claim. *Id.*

**The Complaint fails to plausibly plead that "Plaintiff made the transfers with actual intent to hinder, delay, or defraud its creditors," which is fatal to the Plaintiff's fraudulent transfer claims.**

28.     This Court found in *All Texas* that "Plaintiff has not stated a claim under section 24.005(a)(1)," including for the reason that:

> Here, Plaintiff pled that its 'performance of services under the Subcontract ... were transfers of ATE property ....'93 Since Plaintiff is the one who executed the transfer, to recover under section 24.005(a)(1), **Plaintiff must have pled that Plaintiff itself made the transfer with actual intent to hinder, delay, or defraud. Nothing in the Amended Complaint indicates** that Plaintiff provided these materials and services to ACC and Defendant with intent to hinder, delay, or defraud them. In fact, Plaintiff pled the opposite, suggesting that Defendant and ACC intended to hinder, fraud, or delay Plaintiff."

*In re All Tex. Elec. Contractors, Inc.*, 2022 WL *9 (emphasis added)

29.     Similarly, here, the Plaintiff entirely failed to so plead with respect to most of the transfers; and although Plaintiff made an *effort* to do so on some of the transfers, the effort failed because the language stated in the Complaint as to those transfers effectively pleads the *opposite*. In particular, the Plaintiff pled that "the Debtor made such Transfers

**involuntarily and thereby** hindered and delayed the creditors of Garcia Grain Trading Corporation." Para 46 (emphasis added) Said statement is conclusory. Moreover, if the Debtor made the transfers "involuntarily", then that would actually indicate a ***lack*** of ***intent*** on the Debtor's part and, thus, fail to satisfy the following: "Plaintiff must have pled that Plaintiff **itself** made the transfer *with actual intent to* hinder, delay, or defraud." *Id.* (emphasis added) In other words, how can someone who "involuntarily" transfers something do so with "actual intent" (of any sort)?

**The Complaint also fails to plead that Defendants were "creditors" of Plaintiff, which is fatal to the Plaintiff's fraudulent transfer claims.**

30.     This Court found in <u>*All Texas*</u> that "Plaintiff has not stated a claim under section 24.005(a)(1)," including for the reason that:

> Furthermore, Plaintiff has **failed to plead that Defendant was a creditor of Plaintiff.** The purpose of TUFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach.95 Under TUFTA, a 'creditor' is defined broadly as any person who has a 'claim.'96 'Claim' is defined as 'a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured.'97 **Nowhere in the Amended Complaint, does Plaintiff allege that Defendant is a creditor of Plaintiff or that Defendant holds a claim.** Therefore, Plaintiff has not stated a claim under section 24.005(a)(1).

<u>*In re All Tex. Elec. Contractors, Inc.*</u>, 2022 WL *9 (emphasis added)

Similarly, here, the Plaintiff has failed to so plead.

**The Complaint fails to identify a creditor (with an allowable claim) who could have avoided each transfer under TUFTA, which is fatal to the Plaintiff's fraudulent transfer claims.**

31.     A Complaint must ***identify*** a creditor (with an allowable claim) *who could have avoided **each*** transfer. Doing so is required, as this Court previously observed in *In re Giant Gray, Inc.*, 629 B.R. 814, 853 (Bankr. S.D. Tex. 2020) (Plaintiff seeking to avoid transfers did **not sufficiently** plead that **creditor existed** who would have standing to bring suit under TUFTA and into whose shoes the plaintiff could step, **where the plaintiff failed to list** a single unsecured creditor **who held an allowable claim and who could have avoided the transfer under TUFTA.**)

32.     As applied here, the Complaint merely references "creditors" generally, in conclusory ways, without identifying them or providing any other supporting facts. Thus, the Complaint fails to identify a creditor for each transfer; that is, a creditor who holds an allowable claim and who could have avoided each transfer.

33.     The Complaint *also* fails to address dates of when such creditor(s)' claims (if any) arose, which is necessary given that Section 24.005(a) "requires Trustee to plead that there is a creditor with an allowable claim that arose *before or within a reasonable time of* the allegedly fraudulent transfer." *In re Giant Gray, Inc.*, 629 B.R. at 853 (emphasis is original) As applied here, the Complaint is devoid of claim information, including as to dates.

### The 547 Claims Should be Dismissed; the Defendants are not "insiders"

34.     The Complaint asserts preference claims and alleges that Plascencia is an "insider." Para 58. However, the Complaint does **not** allege than any of the alleged

"transfers" were made within 90 days of the Petition Date.[5]  Accordingly, if the "insider"

allegation fails, then, so do the preference claims. That is because 10 USC § 547(b) reads:

> (1) to or for the benefit of a creditor;
> ...
> (4) made–
> **(A) on or within 90 days before the date of the filing of the petition**; **or**
> **(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider**.

35.     Here, the Complaint does not even allege "(4)(A)". Indeed, there is no

reference in the Complaint to "on or within 90 days." Rather, the Complaint merely alleges

"(4)(B)." See Para 58 (which alleges "made within one year before the Petition Date").[6]

36.     Thus, to survive dismissal, the transfers must have been made to an "insider".

For the below reasons, Plascencia is not an insider. As such, Plaintiff's preference claims

are untimely filed and must be dismissed.

---

[5] Except for the alleged transfer to WNGU; however, that is pled as a *subsequent* transfer. See Paragraph 16 of Complaint. The Complaint does not allege that WNGU is an "insider," this this Motion does not address why WNGU is not an insider.

[6]  The Debtor filed this bankruptcy case on **February 17, 2023** (the **"Petition Date"**). *See* ECF 1 filed in the underlying main bankruptcy case (23-bk-70028). The Court is asked to take judicial notice thereof. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") The Complaint itself alleges that the transfer of "Property 1" occurred on **September 30, 2022**." The Complaint cites to a Deed and references a filing number for the Deed ("Document Number 3384705"). The Court is asked to take judicial notice of said Deed, which is a public record. Said Deed contains language indicating that the Deed is "effective September 15, 2022," which is **more than 90 days prior to the Petition Date**. The same is also true with respect to the other transfers referenced in the Complaint; none of them are alleged to be within 90 days of the Petition Date (except for the alleged *subsequent* transfer to WNGU).

37.     The term "insider" can be characterized in two ways: (i) statutory per se insiders; and (ii) non-statutory insiders that do not deal at arm's length. *In re Smith*, 415 B.R. 222 (Bankr. N.D. Tex. 2009).

38.     Starting with the statutory basis, 11 U.S.C. § 101(31)(B) reads:

> (B) if the debtor is a corporation--
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B)

39.     As applied here, although it is true that the Complaint alleges that Plascencia was a "director, officer, and a person in control of the Debtor," (Para 8), it fails to explicitly state that Plascencia held those roles ***at the time of*** the alleged transfers.[7] See *Mann v. GTCR Golder Rauner, L.L.C.*, 351 B.R. 708, 56 Collier Bankr. Cas. 2d (MB) 784 (D. Ariz. 2006) (Plaintiff *failed* to show that former director and CEO was *still* an insider of debtor **"at the time of"** alleged preferential transfer, and thus could not take advantage of longer one-year "lookback" period on preferential transfers to insiders, **where former director and CEO resigned from his positions with debtor prior** to execution of asset purchase agreement.)

---

[7] While Paragraph 8 might indirectly suggest that those roles were held at the time of the transfers, it does not definitively state so.

40.     Because the Complaint fails to *definitively* allege that Plascencia was a "director, officer, and a person in control of the Debtor" __*at the time of*__ the alleged transfers, the Complaint fails to state an "insider" preference claim. *See Id.*; see also, *In re NetBank, Inc.,* 424 B.R. 568, 52 Bankr. Ct. Dec. (CRR) 260 (Bankr. M.D. Fla. 2010) (Allegations in complaint, that **"on or about"** the time of transferee's resignation as CEO, chairman of the board, and director of debtor-corporation, more than 90 days but less than one year prior to commencement of debtor's Chapter 11 case, transferee had received $2.9 million payment from debtor, were **insufficient to state claim** for avoidance of payment as preferential payment to insider, **absent allegation that transferee was still debtor's CEO, chairman of its board, or director on date of payment**, or that, when payment was made, he otherwise wielded sufficient control over debtor to qualify as "insider.")

41.     As applied here, although the Complaint does not contain the phrase "on or about," it contains other language that is indicative of uncertainty and/or contradictory, for the following reasons. First, the Complaint does not *definitively* allege that Plascencia was a "director, officer, and a person in control of the Debtor" *at the time of* the alleged transfers. Second, the Complaint concedes that **"on July 26, 2022**, Rodolfo Plascencia, Sr. and the Debtor signed a Redemption of Shares and Release Agreement whereby Plascencia **withdrew from the Debtor** and conveyed all of his shares in the corporation." Although the Complaint does not explain what "withdrew" means, it is obviously referring to withdrawing as officer / director, especially given that the Complaint characterizes Plascencia as a "departing officer" (see Para 51). Importantly, the Complaint states that said withdrawal occurred on **"on July 26, 2022"** which is *before* the conveyance

of Property 1.  Indeed, the Complaint itself alleges that the transfer of "Property 1" occurred on "**September 30, 2022**." And, the Complaint cites to a Deed and references a filing number for the Deed ("Document Number 3384705"). The Court is also asked to take judicial notice of said Deed, which is a public record. Said Deed contains language indicating that the Deed is "effective September 15, 2022," which is **more than 90 days prior to the Petition Date**. The same is also true with respect to the other transfers referenced in the Complaint; none of them are alleged to be within 90 days of the Petition Date (except for *perhaps* the alleged *subsequent* transfer to WNGU).

42.     Nor can the Plaintiff prevail on any attempt to show that Plascencia is an insider under the following standard. The cases which have considered whether insider status exists generally have focused on two factors in making that determination: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length. *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992) (internal citations omitted)

43.     Here the Complaint fails to address (other than in a conclusory manner) either of those two factors.

44.     Starting with the "closeness of the relationship" factor, the Complaint fails to address same *as of the time of the transfers*. The Complaint merely alleges that "Rodolfo Plascencia, Sr. is a founding director of the Debtor and was an officer and director of the Debtor for more than 20 years at the time of the Settlement Agreement." However, said allegation is insufficient because the Complaint **concedes** that Plascencia had "*withdrawn*" from the Debtor **prior to** the transfers (as explained *supra*.).

45.     Regarding the "arm's length" factor, the Complaint concedes that the parties were adversaries in litigation leading up to the transfers. And, the Complaint does not indicate that any of the parties were not represented by counsel in the subject transactions. Moreover, the Complaint fails to plead facts of the nature and magnitude necessary to demonstrate this factor. See e.g., this Court's *Chapman* case ("arm-twisting" an "elderly" person in a non-commercial context deemed not "arm's length"). See:

> With respect to the arm's length factor, Defendants contend that the parties were not close, and they were bitter adversaries in litigation.123 They point out that the Settlement Agreement was almost 15 years after their mother had passed, and the Debtor had later remarried.124 Defendants assert that the settlement of litigation with each side represented by counsel and a formal settlement agreement is conclusive proof that the transaction between them was conducted at arm's length.125 In response, Plaintiff argues that a negative relationship does not preclude insider status.126 Plaintiff asserts that Defendants admit to a negative relationship with the Debtor, whom regardless of culpability **was elderly**, after several years of litigation in both state and federal court, culminating in a settlement agreement whereby the Debtor **ceded** any interest in the Chapman Family Trust.127 Plaintiff states that "[s]uch a transaction can easily and plausibly be viewed not as an arms-length transaction, but **an arm-twisting** one **that warrants heightened scrutiny** and non-statutory insider status."128 In support of her position, Plaintiff cites to *In re Tanner* where the hostile relationship between debtor and former **domestic partner** was sufficient to **warrant additional scrutiny** and determination that pre-bankruptcy business was not conducted as arm's length.

*In re Chapman*, No. 19-70333, 2021 WL 852117 (Bankr. S.D. Tex. Mar. 5, 2021)

46.     As applied here, the Complaint does not place this case within the rubric of *Chapman*., i.e., an "elderly" person who was "arm-twisted" by his step children to "cede" an interest in his trust. Nor does the Complaint allege a "domestic" relationship that would "warrant additional scrutiny." To the contrary, the Complaint indicates that the transactions were commercial in nature (not domestic).

47.    In summary, the Complaint does not plead facts (other than conclusory labels, which are supposed to be ignored) indicating that the transfers were not conducted at arm's length.

**An _independent_ ground on which Plaintiff's 547 Claims should be dismissed is that the "Plaintiff does not plead how the [transfers] diminished or depleted Debtor's estate."**

48.    The    Plaintiff    must,    yet    the    Complaint    fails    to, "plead **how** the [transfers] diminished or depleted Debtor's estate." _In re Chapman_, 628 B.R. 512, 533 (Bankr. S.D. Tex. Mar. 5, 2021) (Plaintiff's allegations that debtor relinquished all interests in family trust in settlement agreement with stepchildren, and listing statutory elements of preferential transfer statute, specifically, that transfer enabled stepchildren to receive more than what they would have if the case were a case under Chapter 7, transfer had not been made, and stepchildren received payment of debt owed pursuant to provisions of Bankruptcy Code, were **insufficient** to support preferential avoidance claim, absent allegations **how** the settlement agreement **diminished or depleted debtor's estate**.) In _Chapman_, this Court observed that "Plaintiff does not plead **how** the Settlement Agreement diminished or depleted Debtor's estate." _Id_. at 533 (emphasis added)

49.    As applied here, the Complaint fails to plead **how** the transfers / settlement agreement diminished or depleted Debtor's estate.

**An _independent_ ground on which Plaintiff's 547 Claims should be dismissed is that the Plaintiff's allegations of "antecedent debt" are conclusory, e.g., fail to reveal the "nature" of the debt and "amount" of the debt.**

50.     To state a preference claim, the Complaint must satisfy the burden to plead antecedent debt. 11 U.S.C. § 547(b)(2) ("for or on account of an antecedent debt owed by the debtor before such transfer was made")

51.     The Complaint contains numerous *conclusory* references to an "antecedent debt," all of which are silent as to "nature" and silent as to "amount." See *In re Caremerica, Inc.*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (Plaintiff **must** assert the **nature** and **amount** of the antecedent debt in order to allege a plausible claim for relief to survive a motion to dismiss preference avoidance complaint.)

52.     Moreover, the Complaint must, but fails to, satisfy said threshold as to ***each*** transfer for which preference is alleged. *S*ee also, *In re Bridge Info. Sys., Inc.*, 327 B.R. 382, 387 (B.A.P. 8th Cir. 2005), aff'd, 474 F.3d 1063 (8th Cir. 2007) (In determining whether a settlement payment made by a debtor was made on account of an antecedent debt, for preference avoidance purposes, the bankruptcy court should **"look behind" the settlement agreement** to discern the **nature** of the dispute.) Or, in this case, the "disputes," given the *numerous* separate litigation cases that were settled by the Settlement Agreement.

53.     As applied here, the Complaint contains numerous conclusory references to an "antecedent debt," each of which is silent as to "nature" and silent as to "amount." Accordingly, the Complaint fails to plead, in a non-conclusory manner, the existence of an antecedent debt. Dismissal of Plaintiff's preference claims is, therefore, appropriate.

54.     Also conclusory are the Complaint's allegations of "insolvency," which are found in Paragraphs 9, 23, 28, 30, 31, 36, 37, 42, 47, 49, 55, 58, and 64. *See Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010)

("Plaintiff's allegations that the **'transfers ... rendered Defendants insolvent** ' are **conclusory allegations** that are **insufficient to withstand a motion to dismiss."**); *Ray v. Ray*, No. 18 CIV. 7035 (GBD), 2019 WL 1649981, at *7 (S.D.N.Y. Mar. 28, 2019), aff'd, 799 Fed. Appx. 29 (2d Cir. 2020) ("Plaintiff's **general allegations** that '**the [t]ransfers ... rendered [defendant] insolvent**' ... **are 'mere recitation[s] of the statutory language'** that are **insufficient** to satisfy Rule 8.").

55.     Likewise conclusory is the allegation in Paragraph 10 that alleges that the Debtors "remaining assets" are "unreasonably small amount of capital under the circumstances." Other conclusory allegations are found in Paragraph 49, including the following allegations: "(2) the debtor retained possession or control of the property transferred after"; "(3) the transfer or obligation was concealed" "(5) the transfer was of substantially all the debtor's assets" and "The property transferred by the Debtor pursuant to the Settlement Agreement constituted a significant portion of the Debtor's assets" and "the transfer occurred shortly before or shortly after a substantial debt was incurred" and "The Debtor was heavily in debt when the Settlement Agreement and the surrounding transactions occurred" and "(9) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor" and  "The Debtor transferred the essential assets of the business to…". Further conclusory allegations are found in Paragraph 50, to-wit: "There was no legitimate business purpose for any of these Transfers." Additional conclusory allegations are found in Paragraph 56, to-wit: "The Transfers made prior to and separately from the Settlement Agreement also implicate several of the criteria listed in TEX. BUS. & COM. CODE § 24.005(b) discussed above."

Transfers made prior to and separately from the Settlement Agreement also implicate several of the criteria listed in TEX. BUS. & COM. CODE § 24.005(b) discussed above."

## Prayer

For all the foregoing reasons, the Defendants request that the Court dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice, and for all further relief to which Defendants are entitled.

Respectfully submitted,

**VILLEDA LAW GROUP**

Antonio Villeda
avilleda@mybusinesslawyer.com
State Bar No. 20585300
Mark M. Talbot
mtalbot@mybusinesslawyer.com
State Bar No. 19618850
Cassandra Gonzalez
cgonzalez@mybusinesslawyer.com
State Bar No. 24125248
6316 North 10th Street, Bldg. B
McAllen, Texas 78504
(956) 631-9100 Telephone
(956) 631-9146 Facsimile
***Attorneys for Rodolfo Plascencia, Sr.
and WNGU Properties, LLC***

## CERTIFICATE OF SERVICE

I certify that on June 27, 2023 a true and correct copy of the aforementioned Motion To Dismiss the Plaintiff's Complaint was served electronically through the electronic filing manager on the following:

Andrew Jimenez
U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE U.S. TRUSTEE
606 N. Carancahua Street, Suite 1107
Corpus Christi, Texas 78401
Andrew.jiminez@usdoj.gov

David R. Langston
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408
drl@mhba.com

Shelby Jordan
JORDAN & ORTIZ, P.C.
500 North Shoreline Drive, Suite 900
Corpus Christi, Texas 78401
cmadden@jhwclaw.com


_____
Antonio Villeda