United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 24, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-70028** |
| **GARCIA GRAIN TRADING CORP.,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| | § | |
| **GARCIA GRAIN TRADING CORP.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 23-7002** |
| | § | |
| **RODOLFO PLASCENCIA, SR.** and | § | |
| **WNGU PROPERTIES, LLC,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Following a July 26, 2022, pre-petition settlement agreement, Garcia Grain Trading Corporation was faced with significant debt prior to filing for bankruptcy on February 17, 2023. Seeking to recoup assets allegedly lost to insiders, Garcia Grain Trading Corporation brings this action seeking to undue alleged actual and constructive fraudulent transfers and preferences under Bankruptcy and Texas law. Rodolfo Plascencia, Sr., and WNGU Properties, LLC as defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(6). Garcia Grain Trading Corporation objected to Rodolfo Plascencia, Sr., and WNGU Properties, LLC's motion to dismiss and Rodolfo Plascencia, Sr., and WNGU Properties, LLC responded with their own objection.

On May 17, 2024, the Court held a hearing, and for all the reasons discussed *infra*, Garcia Grain Trading Corporation's Objection is sustained, Rodolfo Plascencia, Sr., and WNGU Properties, LLC's Motion to Dismiss is denied, and Objection overruled.

# I.   BACKGROUND

1. On February 17, 2023, Garcia Grain Trading Corporation ("*Debtor*" or "*Plaintiff*") filed for bankruptcy protection[1] under Title 11 of the Bankruptcy Code[2] initiating the bankruptcy case.[3]

2. On May 26, 2023, Plaintiff initiated this adversary proceeding by filing a "Complaint to Avoid Involuntary and Preferential Transfers"[4] ("*Complaint*").

3. On June 30, 2023, Rodolfo Plascencia, Sr., and WNGU Properties, LLC (collectively, "*Defendants*") filed "Defendants' 12(b)(6) Motion to Dismiss."[5]

4. On February 9, 2024, Plaintiff filed its "Amended Complaint to Avoid Fraudulent and Preferential Transfers"[6] (the "*Amended Complaint*").

5. On March 18, Defendants filed "Defendants' 12(b)(6) Motion to Dismiss"[7] (the "*Motion to Dismiss*") in response to the Amended Complaint.

6. On April 8, 2024, Plaintiff filed its "Plaintiff's Objection and Response to Defendants' Motion to Dismiss"[8] ("*Plaintiff's Objection*").

7. On April 15, 2024, Defendants filed "Defendants' Objections and Reply to the Plaintiff's Objection and Response (DKT. 89) to the Defendants' Motion to Dismiss (DKT.81)"[9] ("*Defendant's Objection*").

8. On May 17, 2024, the Court held a hearing and now issues the instant Memorandum Opinion.

---

[1] "Bankr. ECF" refers docket entries made in the Debtor's bankruptcy case, No. 23-70028. Entries made in Plaintiff's Case number 23-7002 shall take the format of ECF No. __.

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or

any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

[3] Bankr. ECF No. 1.

[4] ECF No. 1.

[5] ECF No. 17.

[6] ECF No. 62.

[7] ECF No. 81.

[8] ECF No. 89.

[9] ECF No. 94.

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. §1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under Title 11 or arising in or related to cases under Title 11." An adversary proceeding falls within the court's "related to" jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[10] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[11] Furthermore, this Court may only hear a case in which venue is proper.[12] Pursuant to § 1409(a), "a proceeding arising under Title 11 or arising in or related to a case under Title 11 may be commenced in the district court in which such case is pending."[13] Debtor's underlying Chapter 11 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.[14]

This Court must evaluate whether it has constitutional authority to enter a final judgment in this case. Pursuant to the "Order Accepting Findings, Conclusions, and Recommendation of the United States Bankruptcy Court"[15] (the "*District Court Order*") this Court is authorized to "hear, adjudicate, and otherwise resolve all pretrial matters, including all dispositive motions provided, however, that for any matter the resolution of which would result in the issuance of a final order or other such order as would be subject to immediate appeal as a matter of right, the Bankruptcy Court may hear such matter, but shall submit proposed findings of fact and

---

[10] *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987).
[11] 28 U.S.C. § 157(a); *see also* In re Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[12] 28 U.S.C. § 1408.
[13] 28 U.S.C. § 1409(a).
[14] ECF No. 62.
[15] ECF No. 74.

conclusions of law to the Court, and any final order or judgment shall be entered by this Court."[16] Because the denial of a motion to dismiss is interlocutory,[17] this order may be entered without a determination of this Court's constitutional authority to enter a final judgment pursuant to the District Court Order.[18]

## II.   ANALYSIS

### A.  The 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[19] "[A] formulaic recitation of the elements of a cause of action will not do."[20] Specifics are unnecessary, but some facts must support each element.[21] Second, the complaint must state a claim "plausible on its face,"[22] meaning the plaintiff's right to relief must rise above a "speculative level."[23] Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[24] In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] "The plausibility standard is not akin

---

[16] *Id.*

[17] Generally, an interlocutory order imposing sanctions against a party's attorney is not immediately appealable under the collateral order doctrine. *Click v. Abilene National Bank*, 822 F.2d 544, 545 (5th Cir. 1987). A denied motion to dismiss is not a final order entitled to appeal as of right. *See Louisiana Ice Cream Distributors, Inc. v. Carvel Corp.*, 821 F.2d 1031 (5th Cir. 1987).

[18] ECF No. 74.

[19] *See* FED. R. CIV. P. 8(a) (made applicable by FED. R. BANKR. P. 7008).

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[22] *Twombly*, 550 U.S. at 570.

[23] *Id.* at 555.

[24] FED. R. CIV. P. 8(a).

[25] 556 U.S. at 679 (quoting Rule 8(a)(2)).

[26] *Id.* at 678.

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[27]

Motions to dismiss are disfavored and thus, rarely granted.[28] When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[29] This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[30] When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[31] The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[32] And although this Court "will not strain to find inferences favorable to the plaintiff[]," [33] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[34] To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

---

[27] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)
("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to
relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.")
(citations omitted).

[28] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[29] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[30] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[31] *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

[32] *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

[33] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[34] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)).

Fraud claims must, in addition, meet Rule 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.[35] "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[36]

Normally, in ruling on a Rule 12(b)(6) motion to dismiss, the Court cannot look beyond the pleadings, and must "accept[] as true those well-pleaded factual allegations in the complaint."[37] In addition to facts alleged in the pleadings, however, the Court "may also consider matters of which [it] may take judicial notice."[38] Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[39] Furthermore, pursuant to Rule 10(c), exhibits attached to a complaint are part of the complaint for all purposes. It is proper for a Court to consider the exhibits as part of the complaint for purposes of a Rule 12(b)(6) motion.[40]

**B. Defendants' Motion to Dismiss**

Plaintiff pleads three causes of action in its Amended Complaint, to wit: (1) Claim pursuant to 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 550, as well as TEX. BUS. & COM. CODE §

---

[35] FED. R. CIV. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir.1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir.1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).

[36] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002)).

[37] *Hall v. Hodgkins*, 305 F. App'x. 224, 227–28 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994); *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[38] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see* FED. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

[39] *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *see also Cinel*, 15 F.3d at 1343 n. 6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

[40] *United States ex rel. Riley v. St. Lukes Episcopal Hosp.*, 355 F. 3d 370, 376 (5th Cir. 2004).

24.005(a)(2)[41] regarding the transfers made pursuant to the July 26, 2022, Pre-petition Settlement, and transfers of $15,000 a month made prior to the Pre-petition Settlement (the "*First Claim*"); (2) Claim pursuant to 11 U.S.C. § 548(a)(1)(A), as well as TEX. BUS. & COM. CODE § 24.005(a)(1)[42] regarding the transfers made pursuant to the Pre-petition Settlement and transfers of $15,000 a month made prior to the Pre-petition Settlement (the "*Second Claim*"); and (3) Claim pursuant to 11 U.S.C. § 547 regarding all transfers made within one year before the petition date (the "*Third Claim*").[43]

Defendants assert that Plaintiff's Amended Complaint[44] should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[45]   because: (1) the Amended Complaint fails to plead any plausible basis for an interest of the debtor in "Property 1" and "Property 2" because the Amended Complaint fails to satisfy the requisites for equitable title under Texas law; (2) the Amended Complaint fails to state a "resulting trust;" (3) the Amended Complaint fails to plead facts to show that previous conveyances are avoidable; (4) the Amended Complaint is conclusory as to "reasonably equivalent value;" (5) the Amended Complaint is conclusory as to whether "Plaintiff made the transfers with actual intent to hinder, delay, or defraud its creditors;" (6) allegations regarding insider status, antecedent debt, and insolvency are conclusory and insufficient; (7) the Amended Complaint fails to plead how any transfers diminished or depleted the Debtor's estate; (8) the Amended Complaint is conclusory as to antecedent debt; (9) the Amended Complaint is beset by conclusory allegations generally,

---

[41] ECF No. 62 at 37.
[42] ECF No. 62 at 44-47.
[43] ECF No. 62 at 49.
[44] ECF No. 62.
[45] ECF No. 81.

including with regard to insolvency; and (10) the Amended Complaint fails to state a claim as to a partial interest in "Property 2" owned by Plascencia, Sr. that was acquired back in 2007.[46]

The Court will consider each of Plaintiff's pled claims and Defendant's arguments, in turn.

### 1. Claim pursuant to 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 550, as well as TEX. BUS. & COM. CODE § 24.005(a)(2)

Plaintiff's Amended Complaint requests the Court to avoid, as fraudulent and preferential transfers, the pre-petition transfers of two properties, Property ID 628665 (the "*Alamo Elevator or Property 1*"), Property ID 219369 (the "*Adjacent Property or Property 2*") (collectively the "*Real Properties*") and a $200,000 cash payment (the "*$200,000 payment*") to Rodolfo Plascencia, Sr., a former alleged insider of the Debtor, (the "*Transfers*") as part of a July 26, 2022, Settlement Agreement (the "*Pre-petition Settlement*").[47] The Amended Complaint further asserts that certain $15,000 payments made pursuant to a November 17, 2017 Memorandum of Confidential Agreement during the time period between November 2017 and May 2022 fall within the applicable windows of periods for fraudulent transfers under both the Bankruptcy Code and Texas Law.[48] Plaintiff asserts these claims under 11 U.S.C. § 548(a)(1)(B) as well as TEX. BUS. & COM. CODE § 24.005(a)(2).[49]

Section 548(a)(1)(B) of the Bankruptcy Code provides, in relevant part, that:

> The trustee may avoid any transfer ... of an interest of the debtor in property ... that was made ... on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... received less than a reasonably equivalent value in exchange for the transfer ...; and ... was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer ...; was engaged in business ... for which any property remaining with the debtor was an unreasonably small capital; [or] intended to incur, or believed that the

---

[46] ECF No. 81 at 2-4.
[47] ECF No. 62 at 5.
[48] ECF No. 62 at 37.
[49] ECF No. 62 at 37.

> debtor would incur, debts that would be beyond the debtor's ability to pay as
> such debts matured....[50]

Similarly, section 24.005(a)(2) of the Texas Uniform Fraudulent Transfer Act ("*TUFTA*")

provides, in relevant part, that:

> A transfer made ... by a debtor is fraudulent as to a creditor, whether the
> creditor's claim arose before or within a reasonable time after the transfer was
> made ..., if the debtor made the transfer ... without receiving a reasonably
> equivalent value in exchange for the transfer ..., and the debtor ... was engaged
> ... in a business ... for which the remaining assets of the debtor were
> unreasonably small in relation to the business ...; or ... intended to incur, or
> believed or reasonably should have believed that the debtor would incur, debts
> beyond the debtor's ability to pay as they became due.[51]
>
> Thus, to successfully maintain an action under § 548, the movant must show that the

debtor had an existing interest in the property at the time of its transfer.[52]

### a.  Interest in Property

Defendants allege in their first argument for dismissal that the Amended Complaint fails

to plead any plausible basis for an interest of the debtor in property.[53] A debtor has an interest

in property if that property would have been part of the debtor's bankruptcy estate had the

transfer not occurred.[54] Plaintiff's Amended Complaint asserts that, had the Transfers not

occurred, all of the transferred property would have been part of the Debtor's estate, therefore,

available to the Debtor's general creditors.[55] Specifically, the Amended Complaint alleges that

the Debtor had an interest in the Alamo Elevator and the Adjacent Property, through equitable

title by virtue of a resulting trust, and the $200,000 payment, that were transferred to Rodolfo

---

[50] 11 U.S.C. § 548(a)(1)(B)(i), (ii)(I)-(III).
[51] TEX. BUS. & COM. CODE § 24.005(a)(2).
[52] *See Hoffman v. Houston Soc'y for the Prevention of Cruelty to Animals* (*In re Hoffman*), No. 16-3222, 2017 Bankr. LEXIS 514, 2017 WL 727543, at *5 (Bankr. S.D. Tex. Feb. 23, 2017), *aff'd* No. AP 16-3222, 2019 U.S. Dist. LEXIS 100537, 2019 WL 2501556 (S.D. Tex. June 14, 2019) *aff'd sub nom. In re Hoffman*, 795 Fed. Appx. 291 (5th Cir. 2020) and *aff'd sub nom. In re Hoffman*, 955 F.3d 440 (5th Cir. 2020) ("[Plaintiff] must have had an interest in the horses at the time they were given to [the Defendant] in order to sustain a § 548 cause of action.").
[53] ECF No. 81 at 2.
[54] *See In re Criswell*, 102 F.3d 1411, 1416 (5th Cir.1997).
[55] ECF No. 62 at 14.

Plascencia, Sr., an alleged insider, which depleted the Debtor's estate in exchange for no consideration.[56]

The Bankruptcy Code does not distinguish between legal and equitable title when defining property of the estate.[57] Nevertheless, under § 541, "all legal and equitable interests of the debtor in property" become property of the bankruptcy estate.[58] The Amended Complaint asserts that Debtor holds equitable title to the real properties referred to as the Alamo Elevator and the Adjacent Property because the funds to purchase those properties were provided by Garcia Grain Trading Corporation, all rights of possession and control belonged to Garcia Grain, and Garcia Grain paid all related expenses and retained all profits, if any.[59] More specifically, the Amended Complaint alleges that Alamo Grain, a general partnership formed on April 20, 2001 by four general partners, Octavio Garcia, Rodolfo Plascencia, Baldemar Salinas, and Ruben Garcia,[60] is considered to be a resulting trustee for the benefit of Garcia Grain who paid actual consideration for the purchase of the Alamo Elevator .[61]  Similarly, Baldemar Salinas Cantu is considered to be a resulting trustee for the benefit of Garcia Grain who paid the consideration for the purchase of the Adjacent Property .[62] These facts sufficiently plead the existence of a resulting trust.[63]

Defendants allege in their second argument for dismissal that even if there was a resulting trust, an identifiable interest of the Debtor in the Alamo Elevator  and Adjacent Property  by virtue of the resulting trust is barred by the statute of limitations, and mutual

---

[56] ECF No. 62 at 37-43.
[57] *In re Texas Std. Oil Co.*, 2008 Bankr. LEXIS 3576, *16 (Bankr. S.D. Tex. 2008).
[58] 11 U.S.C. § 541.
[59] ECF No. 62 at 32.
[60] ECF No. 62 at 20.
[61] ECF No. 62 at 38-39.
[62] ECF No. 62 at 39.
[63] *See generally Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127, 130 (1960).

release.[64] Specifically, Defendants allege that because the Amended Complaint notes that a partition lawsuit was filed on February 1, 2019, there was a repudiation of the resulting trust.[65]

On this issue, the Texas Supreme Court has held that suits enforcing a trust or suits arising out of breach of trust are generally governed by a four-year residual statute.[66] A resulting trust "is an "intent trust" employed when trust property had been used for a special purpose which has terminated or become frustrated so that the law implies a trust for the equitable owner of the property.[67]

Plaintiff's Amended Complaint asserts that a repudiation occurred when the Debtor involuntarily lost the Real Properties  to Rodolfo Plascencia, Sr. pursuant to the Pre-petition Settlement, which is within the four-year period.[68] The Court agrees. The special purpose of the resulting trust would only have concluded if the partition lawsuit concluded, or if it was settled and the property changed hands, which occurred here.[69] It is when the Debtor no longer could use the trust property for its special purpose that would give rise to a suit for breach of trust.[70]

Defendants also assert that Plaintiff failed to state a resulting trust because it was extinguished by the mutual releases in the Pre-petition Settlement.[71] The Bankruptcy Code defines the term "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including the retention of title as a security interest and foreclosure of the debtor's equity of

---

[64] ECF No. 81 at 12-13.
[65] ECF No. 81 at 13-14.
[66] *Meadows v. Chevron, U.S.A., Inc.*, 782 F. Supp. 1189, 1194 (E.D. Tex. 1991), *aff'd in part sub nom. Meadows v. Chevron, USA, Inc.*, 990 F.2d 626 (5th Cir. 1993) (citing *Peek v. Berry*, 143 Tex. 294, 184 S.W.2d 272, 275 (1944)).
[67] *Uriarte v. Petro*, 606 S.W.2d 22, 24–25 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).
[68] ECF No. 62 at 39.
[69] *See generally Uriarte v. Petro*, 606 S.W.2d 22, 24–25 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).
[70] *Id.*
[71] ECF No. 81 at 18.

redemption."[72] The Fifth Circuit teaches that the Code's definition of "transfer" was intended by Congress to be as broad as possible.[73] An interest in property, for purposes of § 548, includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer.[74] Under § 541, "all legal and equitable interests of the debtor in property" become property of the bankruptcy estate.[75] This description is all-encompassing, and Congress intended for it to include state law claims and causes of action.[76] Texas law also recognizes claims and causes of action as interests in property.[77]

Plaintiffs cite, *inter alia*, *e2 Creditors' Trust v. Farris* (*In re e2 Commun's, Inc.*), for the proposition that a prepetition release as part of an agreement is itself a transfer of property of the estate that is subject to being avoided under applicable law.[78] As explained by the court: "Common sense suggests that a release of claims is a 'transfer' of property -- i.e., a method of 'disposing of or parting with' property, as the releasing party gives up the right to assert the claims in the future. Moreover, concluding that a release of claims qualifies as a 'transfer' of property is consistent with the legislative history's guidance that 'transfer' should be broadly construed.[79]

As such, the Court finds that the resulting trust's release is a transfer, and that Plaintiff has sufficiently pled an interest in property to avoid the transfer made as part of the Pre-petition

---

[72] 11 U.S.C. 101(54).

[73] *In re Besing*, 981 F.2d 1488, 1492 (5th Cir. 1993) (citing S.Rep. No. 95-989, 95th Cong.2d Sess. 27 (1978) ("A transfer is a disposition of an interest in property. The definition . . . is as broad as possible."), reprinted in 1978 U.S.C.C.A.N. p. 5787, 5813; H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 314 (1977) (same language), reprinted in 1978 U.S.C.C.A.N. p. 5963, 6271).

[74] *Id.*; (citing *In re Stevens*, 112 Bankr. 175, 177 (Bankr.S.D.Tex.1989); *see also In re Hargis*, 887 F.2d 77, 79 (5th Cir.1989) (stating that the Bankruptcy Code's avoidance provisions are "exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate"), *clarified*, 895 F.2d 1025 (5th Cir.1990)).

[75] 11 U.S.C. § 541.

[76] *See In re Mortgageamerica Corp.*, 714 F.2d 1266, 1274 (5th Cir.1983).

[77] *See Renger Memorial Hosp. v. State*, 674 S.W.2d 828, 830 (Tex.App.--Austin 1984, no writ); *Garrett v. Reno Oil Co.*, 271 S.W.2d 764, 767 (Tex.Civ.App.--Fort Worth 1954, writ ref'd n.r.e.).

[78] 320 B.R. 849, 855 (Bankr. N.D. Tex. 2004); *see also* ECF No. 88 at 8.

[79] *Farris*, 320 B.R. at 856.

Settlement.[80] Therefore, Plaintiff satisfied its burden and sufficiently alleged equitable title by virtue of a resulting trust and has demonstrated that Plaintiff had an interest in the Real Properties.[81]

Having an interest in property however is insufficient to establish claims under 11 U.S.C. § 548(a)(1)(B) and TEX. BUS. & COM. CODE § 24.005(a)(2); the Plaintiff must also demonstrate that the Real Properties and the $200,000 payment would have been part of the debtor's bankruptcy estate had the Transfers not occurred.[82] Defendants' third argument for dismissal is that the Amended Complaint fails to plead facts demonstrating that this element is satisfied.[83] Plaintiff's Amended Complaint asserts that the Transfers that removed the Real Properties, and the $200,000 payment from the soon to be created bankruptcy estate, was the July 26, 2022, Pre-petition settlement.[84] The Pre-petition settlement transferred (1) the Alamo Elevator from Alamo Grain to Rodolfo Plascencia, Sr., which was in turn transferred to WNGU Properties, LLC;[85] (2) the Adjacent Property (the Debtor's equitable title interest) to Rodolfo Plascencia, Sr.,[86] and (3) $200,000 cash by the Debtor to Rodolfo Plascencia, Sr. as part of the settlement of five lawsuits.[87] As such, accepting all facts pled by the Plaintiff as true for purposes of this Motion to Dismiss, the Court finds that absent these transfers, each property would have been part of debtor's bankruptcy estate.

**b. Value and Insolvency**

---

[80] *Farris*, 320 B.R. at 856.

[81] *York v. Boatman*, 487 S.W.3d 635 (Tex. App.—Texarkana 2016) (Generally, where a transfer of property is made to one person, and the whole or a part of the purchase price is paid by another, a resulting trust arises in favor of the payor).

[82] *See In re Criswell*, 102 F.3d 1411, 1416 (5th Cir.1997).

[83] ECF No. 81 at 2.

[84] ECF No. 62 at 39.

[85] ECF No. 62 at 21.

[86] ECF No. 62 at 21, 29.

[87] ECF No. 62 at 29.

Defendants' fourth and ninth argument for dismissal is that the Amended Complaint is conclusory as to reasonably equivalent value and insolvency, respectively.[88] As additional requirements to successfully maintain an action under § 548 and TUFTA, the movant must show that the debtor received less than a reasonably equivalent value in exchange for the transfer and was insolvent on the date that such transfer was made or became insolvent due to the transfer.[89] A complaint that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8.[90]

In its Amended Complaint, Plaintiff asserts that the transfers of the Real Properties, and the $200,000 payment were compelled by the Pre-petition Settlement in exchange for Rodolfo Plascencia, Sr.'s release of claims against the Debtor and other parties that he had raised in five separate lawsuits.[91] Plaintiff further asserts that the Debtor released counterclaims that it held against Rodolfo Plascencia, Sr. under the settlement agreement.[92] The Amended Complaint also explains that the releases from the five lawsuits involving the Debtor could not have been equivalent to the value it provided in return, namely an estimated value of $143,498 for the Alamo Elevator , $96,000 for the Adjacent Property , and the $200,000 payment made in cash.[93] Absent a valuation of the claims held against the Debtor, it is unclear whether the Debtor received less than reasonably equivalent value; however, the Amended Complaint asserts that the claims within these five lawsuits did not belong to Rodolfo Plascencia, Sr. and therefore, the release of such claims provided no benefit to the Debtor.[94] As such, accepting all facts pled

---

[88] ECF No. 81 at 3-4.
[89] 11 U.S.C. § 548(a)(1)(B)(i); TEX. BUS. & COM. CODE § 24.005(a)(2).
[90] *Faulkner v. Lone Star Brokering, LLC* (*In re Reagor-Dykes Motors, LP*), 2021 Bankr. LEXIS 1643, at *11-12 (Bankr. N.D. Tex. 2021).
[91] ECF No. 62 at 7.
[92] ECF No. 62 at 35.
[93] ECF No. 62 at 34.
[94] ECF No. 62 at 34-35.

by the Plaintiff as true for purposes of this Motion to Dismiss, the Court finds that that the Plaintiff has sufficiently pled that the Debtor received less than a reasonably equivalent value in exchange for the transfer.[95]

Defendants' seventh argument for dismissal is that the Amended Complaint fails to plead how any transfers diminished or depleted the Debtor's estate.[96] Plaintiff's Amended Complaint addresses insolvency by noting that at the time of the transfer, Debtor was in significant financial distress, including significant debt compared to assets, and was unable to meet its day-to-day operating obligations, which was further exasperated by the transfers.[97] Specifically, the Amend Complaint indicates that Debtor had significant debt burdens to several of its creditors, such as approximately $8.1 million in debts owed to GrainChain, Inc. and approximately $20 million in debt to StoneX.[98] Removal of the Real Properties and the $200,000 in cash aided in preventing the Debtor from paying its debts as they became due.[99] Accepting these facts as true, the Court finds that Plaintiff has sufficiently pled that the Debtor was insolvent at the time of the transfers.[100]

As such, the Court finds that that Plaintiff has sufficiently pled its causes of action under the First Claim. The Court will next consider the Second Claim.

2. **Claim pursuant to 11 U.S.C. § 548(a)(1)(A), as well as TEX. BUS. & COM. CODE § 24.005(a)(1)**

---

[95] *See In re Calvillo*, 263 B.R. 214, 220 (W.D. Tex. 2000), "[t]here is no set minimum percentage or monetary amount necessary to constitute reasonably equivalent value… the value that a debtor receives in exchange for transfers is a "reasonably equivalent value" from the standpoint of creditors if that value is "substantially comparable to the worth of the transferred property." *In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010) (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 548, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)).
[96] ECF No. 81 at 3.
[97] ECF No. 62 at 41-42.
[98] ECF No. 62 at 14.
[99] ECF No. 62 at 40-42.
[100] *See e.g., Williams v. Wu* (*In re TTC Plaza L.P.*), 2014 Bankr. LEXIS 2915 at *10-11 (Bankr. S.D. Tex. 2014) (finding that the debtor was insolvent at the time of the challenged transfer and became even more insolvent as a result of the transfer).

The Second Claim, in addition or in the alternative of the First Claim, seeks to avoid the same Transfers discussed *supra* made pursuant to the Pre-petition Settlement under 11 U.S.C. § 548(a)(1)(A) as well as TEX. BUS. & COM. CODE § 24.005(a)(1). Section 548(a)(1)(A) of the Bankruptcy Code provides, in relevant part, that:

> The trustee may avoid any transfer ... of an interest of the debtor in property ... that was made ... on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ..., indebted.[101]

Similarly, section 24.005 of TUFTA provides, in relevant part, that:

> A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made ..., if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor of the debtor.[102]

The element of an actual fraudulent transfer that differs from a constructive fraudulent transfer, discussed *supra*, is whether the transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor.[103] Defendants' fifth argument for dismissal is that the Amended Complaint is conclusory as to whether the Transfers were made with the actual intent to hinder, delay, or defraud any creditors.[104]

Plaintiff's Amended Complaint asserts several badges of fraud under TUFTA, indicating that this element is satisfied, to wit: (1) the transfer or obligation was to an insider due to, *inter alia*, Rodolfo Plascencia, Sr. being the director of the Debtor;[105] (2) the debtor had

---

[101] 11 U.S.C. § 548(a)(1)(A).

[102] TEX. BUS. & COM. CODE § 24.005(a)(1).

[103] *See Life Partners Creditors' Trust v. Cowley* (*In re Life Partners Holdings, Inc.*), 926 F.3d 103, 120 (5th Cir. 2019) ("The elements of a constructive fraudulent transfer under Texas law are the same as actual fraudulent transfer except instead of pleading fraudulent intent, the plaintiff must plead facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and (2) the transferor was "financially vulnerable" or insolvent at the time of the transaction.").

[104] ECF No. 81 at 3.

[105] ECF No. 62 at 45. ("Determination of non-statutory insider status, for purposes of § 24.005(a)(1) claims under the Texas Uniform Fraudulent Transfer Act (TUFTA), generally focuses on two factors: (1) closeness of relationship between transferee and debtor, and (2) whether transactions between transferee and debtor were

been sued or threatened with suit before the transfer;[106] (3) the transfer was of substantially all of the debtor's assets;[107] (4) the value of the consideration was not reasonably equivalent to the value of the asset transferred;[108] (5) debtor was insolvent or became insolvent;[109] (6) transfer occurred shortly before or after a substantial debt was incurred;[110] (7) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[111] Plaintiff's Amended Complaint explains in detail how each of these badges of fraud are demonstrated and thus, the Court finds this element is well pled.[112] As such, the Court finds that the Second Claim sufficiently alleges a plausible violation of the applicable statutes.[113]

---

conducted at arm's-length. *In re Essential Financial Education, Inc.*, Bkrtcy.N.D.Tex.2021, 2021 WL 1748202. Rodolfo Plascencia, Sr. is a founding director of the Debtor and was an officer and director of the Debtor for more than 20 years at the time of the Settlement Agreement. Most of the parties to the Settlement Agreement are related to the Debtor and/or to each other either as family members or as employees, agents, or otherwise. The transfers have not been conducted at arm's length.").

[106] ECF No. 62 at 46. ("Between 2017 and 2019, Plascencia sued the Debtor and its principal, Octavio Garcia; his wife, Gabriela Garcia; other officers, employees and/or agents of the Debtor. Those lawsuits, referred to as Lawsuit Nos. 1 through 5 above, were for payment of a $491,602.99 loan made by Plascencia to Debtor as well as partition of real property jointly owned by Plascencia and other officers and directors of the Debtor.").

[107] ECF No. 62 at 46. ("The property transferred by the Debtor pursuant to the Settlement Agreement constituted all or a significant portion of the Debtor's assets.").

[108] ECF No. 62 at 46. ("The value received by the Debtor under the Settlement Agreement, namely, the release of the claims in the above-mentioned lawsuits, was not reasonably equivalent to the value of the assets transferred to Plascencia, as explained above in this Amended Complaint. Plascencia released claims which did not belong to Plascencia in the first place and extinguished an alleged antecedent debt of questionable amount, neither of which constituted proper consideration.").

[109] ECF No. 62 at 46. ("The Debtor was insolvent while making the $15,000.00 payments to Plascencia prior to the July 26, 2022 Settlement Agreement, or became insolvent as a result of such Transfers. The Debtor remained insolvent at the time of the July 26, 2022 Settlement Agreement and at the time of the Transfers, and in fact suffered a great financial harm as a result of those Transfers. Plascencia, as an "insider," knew of the Debtor's financial troubles and actual or imminent insolvency since he was an officer of Garcia Grain at the time of the Settlement Agreement for over twenty years.").

[110] ECF No. 62 at 46. ("The Debtor was heavily in debt at the time of Lawsuits No. 1 which led to an obligation to make $15,000.00 monthly payments to Plascencia The Debtor remained in debt during the Lawsuit Nos. 2 through 5 and afterwards, including at the time of the July 26, 2022 Settlement Agreement and the rest of the Transfers made pursuant to it.").

[111] ECF No. 62 at 46-47. ("The Debtor transferred the essential assets of the business to an insider, i.e., founding director, Plascencia, Sr. The Alamo Elevator (the "Property 1" identified above) was an integral part of the Debtor's grain storage business in the Rio Grande Valley area. Likewise, Property "2" and the $200,000.00 cash, as well as the total sum of the $15,000.00 monthly payments were essential assets of the Debtor which were nevertheless transferred to an "insider" who asserted a claim against the Debtor and the Debtor's directors, officers or affiliates.").

[112] *See generally* ECF No. 62 at 45-47.

[113] *Id.*

### 3. Claim Pursuant to 11 U.S.C. § 547.

The Third Claim, in addition or in the alternative of the First Claim and Second Claim, asserts that all transfers made within one year before the petition date should be avoided as preferential transfers to an insider pursuant to 11 U.S.C. § 547.[114] Defendants' eight argument for dismissal is that the Amended Complaint is conclusory as to antecedent debt.[115]

Sections 547(b) and 550 of the Bankruptcy Code authorizes the avoidance and recovery of a transfer of "an interest of the debtor in property" if five elements are satisfied and unless one of seven exceptions defined in §547(c) is applicable.[116] The five elements are: that a transfer (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy (or one year if the creditor was an insider at the time of the transfer); and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made.[117] Section 547(g) expressly states that the debtor has the burden of proving elements of a preferential transfer under subsection (b), and the creditor or party in interest against whom recovery is sought has the burden of proving the non-avoidability of a transfer under subsection (c).[118] A debt is "antecedent" for purposes of § 547(b) if it was incurred before the alleged preferential transfer.[119]

The Third Claim alleges that the transfer of the Alamo Elevator, the Adjacent property, $200,000, and five monthly payments of $15,000 made pursuant to a 2017 "Memorandum of Confidential Agreement" made between February 17, 2022 and the Petition Date to an insider and creditor, should be avoided as they were made on account of an antecedent debt, the Pre-

---

[114] ECF No. 62 at 49.
[115] ECF No. 81 at 4.
[116] *In re Willis*, 2011 Bankr. LEXIS 1157, at *6-7 (Bankr. E.D. Tex. 2011).
[117] *See* 11 U.S.C. § 547(b).
[118] *See id.* at § 547(g).
[119] *See Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996).

petition Settlement here, which diminished the amount of assets in Debtor's estate which would have otherwise been available to its creditors, at a time in which the Debtor was insolvent.[120] As discussed *supra*, the Debtor was insolvent, the transfer was made on the behalf of a creditor for a debt due pursuant to the Pre-petition Settlement, made within one year, to the full satisfaction of the Pre-petition Settlement.[121] Thus, the Court must next determine whether Plaintiff has sufficiently pled that Rodolfo Plascencia, Sr. was an insider for purposes of § 547(b).

### a. Insider Status of Rodolfo Plascencia, Sr.

Defendants' sixth argument for dismissal is that the Amended Complaint is conclusory and insufficient as to insider status.[122] Under § 101(31) of the Bankruptcy Code, the term insider includes, *inter alia*, if the debtor is a corporation, the director of the debtor, an officer of the debtor, or person in control of the debtor.[123]

The Amended Complaint is clear that at the time of the Pre-petition Settlement, Rodolfo Plascencia, Sr. signed the Pre-petition Settlement on behalf of the Debtor, and therefore exercised control over the Debtor.[124] This Court finds that this fact, when accepted as true, is sufficient to demonstrate Insider status under § 101(31), through control of the Debtor.[125] As such, Plaintiff's Amended Complaint sufficiently alleges insider status.[126]

As such, the Court finds that the Third Claim sufficiently alleges a plausible violation of the applicable statutes.

### b. Rodolfo Plascencia, Sr.'s Partial Interest

---

[120] ECF No. 81 at 5-6; ECF No. 62 at 47-51.
[121] ECF No. 62 at 49-51.
[122] ECF No. 81 at 3.
[123] 11 U.S.C. § 101(31)(B)(i-iii).
[124] ECF No. 62 at 11.
[125] *See In re Fabricators, Inc.*, 926 F.2d 1458, 1464-66 (5th Cir. 1991).
[126] See 11 U.S.C. § 101(31)(B)(i-iii); Tex. Bus. & Com. Code § 24.002(7)(B)(i-iii).

Defendant's' tenth and final argument for dismissal is that the Amended Complaint generally fails to state a claim regarding the Adjacent Property , because Rodolfo Plascencia, Sr. owned a partial interest in the property back when it was acquired in 2007.[127] Nevertheless, as discussed *supra*, the Adjacent Property  was acquired for the benefit of Garcia Grain, and like Baldemar Salinas Cantu, Rodolfo Plascencia, Sr. is considered to be a resulting trustee as Debtor paid the purchase price for the acquisition and paid all operating expenses and ad valorem taxes for the Adjacent Property.[128] As such, Debtor has plausibly pled that it held equitable title by virtue of a resulting trust, which was repudiated when the Debtor involuntarily lost the Adjacent Property  to Rodolfo Plascencia, Sr. pursuant to the Pre-petition Settlement.[129]

Therefore, having carefully reviewed Plaintiff's Amended Complaint,[130] each of the arguments raised by Defendants in their Motion to Dismiss, and by Plaintiff in its 12(b)(6) Objection, this Court finds that Plaintiff's Amended Complaint[131] is well pled and that each cause of action enumerated therein states a claim that satisfies the pleading standards in Rule 8(a) and 9(b).[132] Furthermore, this Court also finds that each of the arguments made by Defendants in their Motion to Dismiss is without merit. The Court further finds that each argument raised in "Defendant's Objections and Reply to the Plaintiff's Objection and Response (DKT. 89) to the Defendants' Motion to Dismiss (DKT.81)"[133] are without merit.

---

[127] ECF No. 81 at 46.
[128] ECF No. 62 at 5.
[129] ECF No. 62 at 7-9.
[130] ECF No. 62.
[131] ECF No. 62.
[132] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when
assumed to be true raise a right to relief above the speculative level."
[133] ECF No. 94.

Thus, the Court sustains Plaintiff's 12(b)(6) Objection and denies Defendant's Motion to Dismiss in its entirety.

### III.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 24, 2024

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge