**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GARCIA GRAIN TRADING CORP.,** | § | **CASE NO. 23-70028** |
| Debtor | § | **Chapter 11** |

---

| | | |
|---|---|---|
| **GARCIA GRAIN TRADING CORP.,** | § | |
| Plaintiff, | § | |
| | § | **ADVERSARY NO. 23-07002** |
| **v.** | § | |
| | § | |
| **RODOLFO PLASCENCIA, SR., and** | § | |
| **WNGU PROPERTIES, LLC** | § | |
| Defendant | § | |

---

## COMPROMISE SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE OF ALL CLAIMS

---

THIS COMPROMISE SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS (the "Agreement") is entered into this 11th day of November, 2025 (the "Effective Date") by and between the following named individuals and entities (herein collectively the "Parties" and individually a "Party"):

**Plaintiff:**

i.      The Garcia Grain Trading Co. Plan Trust (herein "Plan Trust") successor in interest provided in the Chapter 11 confirmed Plan of Reorganization (the "Plan") of the Debtor Garcia Grain Trading Co. ("GGT") in its Chapter 11bankruptcy #23-70028, Southern District of Texas (McAllen Division) (the "Bankruptcy Case"; and

ii.     The Plan Trust Trustee Richard Schmidt (herein "Plan Trustee") named in the Plan;

**Defendants**:

i.        Rodolfo Plascencia, Sr. (herein "Plascencia, Sr.");

ii.       WNGU, LLC (herein "WNGU") a Texas limited liability company with its principal place of business in the City of Alamo, Hidalgo County, Texas, owned and operated by Plascencia, Sr. and Plascencia, Jr.

**Affiliated Third Parties of Plaintiff and Defendants**:

i.        As to each individual, their spouses, heirs and assigns.

ii.       As to each entity, its past or present owners, members, managers, officers, directors, trustees, partners, agents, retained professionals, attorneys, subsidiaries, affiliates, joint venturers, or subsidiaries.

**Affiliated Third Party of Defendants only:**

i.        Plascencia, Jr.

## I.
## Recitals

Whereas, GGT operated from incorporation until confirmation of its Plan a business operation dealing primarily with agricultural commodities including Grain, seeds, beans and the storage thereof for sale primarily in Mexico and during this time was primarily owned and operated by Octavio Garcia, Baldemar Solis, and Plascencia, Sr., each serving as officers and Directors and key employees in specific areas of operations (herein the "Relationship Transaction");

Whereas, associated with and included in the Relationship Transaction involved the purchase by GGT of two parcels of real property located in the Rio Grande Valley: (i) the Alamo Grain Elevator located in Alamo, Texas, (herein the "Alamo Elevator") and titled in the name of a General Partnership Alamo Grain Partners[1]; and  (ii) the unimproved farming real property

---

[1]    **Exhibit "A"** attached hereto and incorporated herein as if fully set out *verbatim* is the legal description of the Alamo Elevator.

located in the vicinity of the Progreso Elevator that was owned by GGT (herein the "Adjacent Property") and titled in the name of Plascencia, Sr.[2]

Whereas *bona fide* disputes exist between the Parties, as to the claims, rights, obligations, and demands by and between the Plaintiff, The Plan Trust, and the Defendants Plascencia, Sr. and WNGU, more fully set out in the pending Adversary Proceeding # 23-07002 in the Bankruptcy Case (the "Adversary Proceeding"), both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, the Parties hereto desire to compromise and settle all claims and causes of action of any kind whatsoever (defined herein below as "Claims") which Plaintiff and Defendants may have now against one another, whether or not arising directly or indirectly out of the Relationship Transaction, and the Parties intend that the full terms and conditions of the compromises and settlement be set forth in this Agreement; and

Whereas this Agreement is intended to settle all Claims owned by each Party (as herein defined) including all Claims arising in, related to, or which could have or should have been raised in, the pending Adversary Proceeding, including known or unknown claims, save and except any claim created by the breach of or as provided in, this Settlement Agreement .

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, including the recitals set forth hereinabove, and the timely performance of the obligations set out herein, the Parties agree as follows:

## II.
## Definitions

The following definitions, as well as any other defined terms set out in this Agreement, shall apply to this Agreement, in addition to the defined terms above or in Exhibits attached hereto:

---

[2]      **Exhibit "B"** attached hereto and incorporated herein as if fully set out *verbatim* is the legal description of the Adjacent Tract.

"**Closing Date**" shall be the last date by which this Agreement is finally and fully concluded, 10 business days from entry from the order approving this Settlement Agreement.

**Closing Documents**:  means, as to the Alamo Elevator and the Adjacent Property, the exchange or transfer which shall be evidenced by the original executed transfer documents, a general warranty deed for Alamo Elevator, release of *lis pendens* on the Adjacent Tract, payment of all ad valorem taxes and any other encumbrances on the Alamo Elevator, the Declaration of Exhibit "C" and the Exhibit "1" attached to the Exhibit "C",[3] or other amounts due necessary to remove encumbrances against the title of the Alamo Elevator, and the costs of the title company to conclude the transfer to the respective Parties to this Agreement.

"**Claims**" shall mean to include, without limitation, any and all possible assertions of any and all legal or equitable causes of action arising out of the Relationship Transactions including any and all contentions, assertions or arguments, however raised, and any legal, equitable, statutory or common law (i)  right, privilege, benefit, or protection; and (ii)  all responsibility, obligations, duties, or (iii)  demands, damages, debts, and whether fixed or contingent, real or spurious, and whether arising out of state or federal common law, contract, tort, regulation, domestic or foreign statute or any applicable constitution domestic or foreign law, rule, or any Court opinion or holding, and whether now known or if unknown, whether discovered or not discovered including a claim that could have or should have been discovered, and whether or not discoverable at this time, arising out of any Relationship or Relationship Transaction (as those terms are defined herein) including any assertion of a loss of a right or property (whether tangible or intangible), including but expressly not limited to loss of income, loss of earning capacity, loss of personal or business reputation, mental anguish, defamation, intentional infliction of any tort, any business

---

[3]     Attached hereto as Exhibit "C" is the Declaration of No Known Latent Defects to be signed and sworn to by Defendants and delivered a provided in this Settlement Agreement.

losses, loss of profits, loss of goodwill, conversion, actions or damages for any conduct, reduction of value in business, attorney's fees or any other damages or expenses, and expressly including any assertion that this Agreement, or any part thereof arose as a result of any omission, misrepresentation, fraud or improper conduct, and expressly including any claim of fraud in the inducement of this agreement and whether or not having been raised in the pending Adversary Proceeding.  For clarity, the term "Claims" shall not include any claim that arises out of the breach of the Settlement Agreement or the Arbitration that may be implemented by the Settlement Agreement or claims not owned by a Party.

"**Excluded Alamo Elevator Property**" means only the property listed on **Exhibit "D"** attached hereto as non-attached equipment purchased by Defendants after Defendants acquired title to such non-attached equipment.

"**Payment Date**" shall mean any payment due on the Closing Date, that is required to conclude the closing, including payment of any ad valorem taxes, payment necessary to remove encumbrances on title to the Alamo Elevator or payment to remove the *lis pendens* on the Adjacent Property, and the like.   For clarity, there is no cash payment required to be made by any Party otherwise to be paid to any other Party pursuant to this Settlement Agreement.

"**Relationship**" shall mean and include the "Relationship Transaction" and any every conceivable transaction, event, circumstance, demand, promise, conduct, action actually taken, or which could have been taken, or which could be claimed was undertaken or not undertaken when due, in respect thereto, by and between the Parties and which could ever be alleged or argued to give rise to a Claim.

"**Relationship Transaction**" shall mean as described in the Recitals hereof, and every possible Claim and every possible related choate or inchoate personal right, lien right, labor, or

service charge, assessment, right or remedy regarding the Relationship that any Party could assert as any a performance or the non-performance of an personal or entity obligation, duty, fiduciary duty, promise, representation, warranty, ("Obligations") or any other statement or conduct giving rise to any such Obligations.

"**Settlement Document**" shall mean (i) this Agreement fully executed with proper authority by the Party or its legal representative; and  (ii) all attached or referenced documents required to be executed and delivered by the Parties, including any release of lien, dismissal of proceedings and agreed orders; and (iii) and any other document contemplated or reasonably required by this Agreement in order to accomplish the intent and purpose of this Agreement, all as described herein.

### III.
### Affirmative Performance Terms Through Closing

1.      The Parties agree, to execute this Agreement on or before the closing date, by and through the individuals named herein, or the authorized Parties' entity representative(s) having full authority to bind themselves and the entity to all of the terms and provisions of this Agreement, and deliver, each to the other, an original executed counterpart of this Agreement.

2.      To the extent that any Party alleges that this Agreement does not reflect the settlement terms agreed and announced to the Court, such non-agreement shall be presented to the Court.

2.      The Parties have agreed to a transfer of good title to the Alamo Elevator (along with all attachments, out-buildings, furniture, fixtures, equipment, tools, spare parts, inventory of any such category, and all related property located on the Alamo Elevator property on and after September 22, 2025, free of all liens, claims and encumbrances, except for the Excluded Property to be retained by Defendants set out in **Exhibit "D"** attached hereto, in exchange for a release of

the *lis pendens* on the Adjacent Tract, to occur at the same time and at Closing. For Clarity, whenever Defendants have vacated the Alamo Elevator and permitted inspections of the empty elevator and deliver good title free from any liens or encumbrances (including taxes due at closing) at Closing, the Plaintiff will cause to be recorded by the title company a release of the *lis pendens* at that time.

3. To accomplish the Closing, the Plan Trust will be allowed to fully inspect the elevator, including from the inside after all commodities are removed, so that the Plan Trust can promptly evaluate any material and substantial latent defects declared by Defendants and promptly put the elevator on the market for sale after the Closing Date. Obtaining of this inspection, or any future inspection before Closing shall will not waive, alter, modify or estop Plaintiff from recovering all damages allowed by law for the reduction in value of the Alamo Elevator and all other damages allowed by law for the failure to timely disclose the existence of any material defects required to be disclosed by the Exhibit "C" Declaration and the Exhibit "1" disclosure of all material defects, subject to the provisions that require that such failure to disclose was made with knowledge of or suspicions about the defects.

4. Defendants shall furnish to Plaintiffs <u>at the time of the execution of this Agreement</u> their sworn Declaration of No Known Latent Defects attached hereto as **Exhibit "C" [including the Exhibit "1" that must be completed and attached]**, and ratify such Declaration at Closing, confirming that to the personal knowledge of both Plascencia Sr. and Jr., (both individually and on behalf of WNGU) they are not aware of any latent defect or defects provided in Exhibit "C" that they have discovered or suspected to exist during operations and ownership of the Alamo Elevator that could materially and substantially impact the ability to continue operating the Alamo Elevator as it was constructed and intended or to market the Alamo Elevator as a grain storage

facility.

5.      It is acknowledged by Plaintiff that this Declaration is not a representation or warranty that no defects exist with the Alamo Elevator, but that Plascencia Sr., and WNGU (through its owner and manager) do not have personal knowledge nor any suspicion of such a latent defect that must be disclosed on Exhibit "C".   However, if the inspection(s) of the Alamo elevator, or thereafter, in fact reveal an undisclosed defect not on Exhibit "C" or Exhibit "1" to Exhibit "C" that does materially and substantially impact the Alamo Elevator's fair market value, any claim by Plaintiff shall be for damages only for the failure of the Defendants to disclose the defect (subject to the knowledge or suspicion limitations), and such subsequent claim by Plaintiff will be determined only by Arbitration before Eric Taube as the arbitrator, pursuant to the AAA rules.  The fact that a pre-closing material defect is discovered will not reverse the Settlement Agreement.  For the purpose of certainty and clarity, the Parties agree that any Closing of this Settlement Agreement will not waive, alter, modify or estop Plaintiff from recovering all damages allowed by law for the reduction in value of the Alamo Elevator and all other damages allowed by law for the failure to timely disclose the existence of material defects that were required to be disclosed by the Exhibit "C" Declaration and the Exhibit "1" disclosure of all material defects. Likewise, nothing contained herein shall subject Defendants to any liability without the requisite requirement of knowledge or objective suspicion of the latent defects.

6.      On and promptly after the Closing Date the Plaintiff and Defendant shall jointly submit an Order of dismissal with prejudice of the Adversary Proceeding in form attached hereto as **Exhibit "E"** without restriction, limitation, or interference, directly or indirectly, by any party in the submission and entry of an Order of Dismissal.

## IV.
## Full and Mutual Releases

7. Except as provided in ¶ 5, on and after Closing Date the Plaintiff hereby RELEASE, DISCHARGE AND FOREVER ACQUIT each Defendant Party, and the third parties listed above, from and against any Claims.

8. Except as provided in ¶ 5, on and after Closing Date the Defendants, and each of them hereby RELEASE, DISCHARGE AND FOREVER ACQUIT each Plaintiff, and the Plaintiff third parties listed above, from and against any Claims.

9. Except as provided in ¶ 5, each Party shall have complied with all other terms of this Agreement that must be satisfied on the Closing Date; then, in that event the performing Party shall be forever  RELEASED, DISCHARGED AND ACQUITTED from and against any Claims by any other Party.

## V.
### Indemnity

9. Each Party hereby represents to the other Parties that it is the sole and exclusive owner of the Claims it has released and settled by this Agreement, and agrees to indemnify, defend and hold harmless any other Party and their Third Parties to the extent of any release of Claims provided herein from a Party to another Party, from all Claims that may be later asserted against a released Party, from and against any and all such released Claims made, the indemnity from damages, the reasonable and necessary costs, including attorney's fees, incurred in the defense of any such claim directly or indirectly related to any claim brought against the released Party which are derivative of any Claim or right of any released Claim.

## VI.
### POST-CLOSING ARBITRATION BEFORE SINGLE ARBITRATION JUDGE

**10. IT IS AGREED AND ACKNOWLEDGED BY EACH PARTY HERETO THAT ANY DISPUTE THAT ARISES OUT OF THIS AGREEMENT REGARDING ANY CLAIM ARISING IN, ARISING UNDER, OR RELATED TO THIS AGREEMENT, SHALL BE EXCLUSIVELY SUBJECT TO ARBITRATION BEFORE A SINGLE**

**ARBITRATION JUDGE HONORABLE ERIC TAUBE, OR IN THE EVENT OF HIS DEATH OR DISABILITY, THE ARBITRATION JUDGE NAMED BY THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS (McALLEN DIVISION).  ARBITRATION IS TO BE CONDUCTED PURSUANT TO THE RULES OF AAA.**

## VII.
## OTHER MISCELLANEOUS TERMS

11.    **Entire Agreement; Time**.  This Agreement contains the entire understanding between the parties and supersedes any prior understanding and/or oral agreements between them respecting the subject matter of this Agreement.  Any modification or amendment of this Agreement shall be in writing and executed by each party hereto.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.  If the last day to perform under a provision of this Agreement or the final day of any falls on a legal holiday, the time for performance or the period is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

16.    **Compromise Only**:  It is acknowledged as understood and agreed by each Party to the other that this Agreement is a compromise of doubtful and disputed Claims, and that nothing contained herein shall be construed as an admission of liability by or on behalf of either party, all such liability being expressly denied, and nothing herein shall be an admission that any debt was due or owing nor any right of recovery is being acknowledged, other than the obligations of each respective Party set out herein to survive the Closing Date or the Distribution Date as the case may be.

17.    **Governing Law and Venue**:  It is understood and agreed that this Agreement shall be governed by, construed and enforced in accordance with, and subject to, the laws of the State of Texas and will be subject to Venue for any dispute exclusively not covered by the dispute resolution of Arbitration, or in the event of Arbitration, the exclusive court to confirm an arbitration

award for a Party or Parties shall be the Bankruptcy Court for the Southern District of Texas (McAllen Division).

18.    **Court Reformation or Modification**:   Should any term, covenant or provision of this Release be deemed invalid, unlawful or otherwise improper by any court of competent jurisdiction, then such term, covenant or provision shall be reformed and modified to the minimum extent necessary to achieve conformity with the applicable law so as to accomplish the intent of this Agreement.  Said reformation shall be deemed effective as of the original date of this Release.

19    **Attorneys Fees Arising From Litigation**:   If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing Party shall be entitled to reasonable attorney's fees and costs in addition to any other relief to which it may be otherwise entitled.

20.    **Binding Effect on Representatives**:   This Agreement, and in particular, the Releases shall be binding and conclusive upon and inure to the benefit of and be enforceable by the respective Parties Affiliated Third Parties listed above.

21.    **Non-Assignment**:   Neither this Agreement nor the rights and obligations hereunder have been assigned, nor may any right and obligation hereunder be assigned by any Party without the consent of the other Parties.

22.    **No Favored-Party Construction**:   This Agreement and the Release shall be construed as the result of negotiation among the Parties and as such shall not be construed more strictly against one party than the other.  Each Party has been represented in this matter by competent legal counsel of their own selection.

23.    **Grammar and Construction Rules**:  Unless otherwise required by context, the genders shall include each other, and the singular shall include the plural and the plural the

singular.   Headings, captions and titles are for convenience only and shall not limit or restrict the interpretation or construction of the passage(s) to which such headings, captions and titles may relate.

24.     **Multiple Counterparts**:  It is understood and agreed that this Agreement will be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes. This Agreement shall not be filed in the records of any Court or any public record without the written consent of the other Parties.

25.     **No Third-Party Beneficiary Terms Intended**:  Other than reference to the Affiliated Third Parties, there are no third-party beneficiary provisions of this Agreement intended by any Party to this Agreement unless specifically set out herein as such.

26.     **Change of Address.**  By notice given as herein provided, the parties hereto and their respective successors and assigns shall have the right from time to time, and at any time during the term of this Agreement continuing after Closing, if any, to change their respective addresses effective upon receipt by the other parties of such notice and each shall have the right to specify as its address any other address within the United States of America.

27.     **Notice by Attorneys.**  The attorneys for either Party may give notices on behalf of the Party whom they  represent.

28.     **Performance on Business Days.**  In the event the date on which performance or payment of any obligation of a Party required hereunder is other than a Business Day, the time for payment or performance shall automatically be extended to the first (1st) Business Day following such date.

29.     **Time of Essence.**  Time shall be of the essence with respect to the performance of each and every covenant and obligation, and the giving of all notices, under this Agreement.

IN WITNESS WHEREOF, the Parties have executed this agreement on the Effective Date first set out above.


**THE GARCIA GRAIN TRADING CO.**
**PLAN TRUST**

_____
RICHARD SCHMIDT, PLAN TRUSTEE


**RODOLFO PLASCENCIA, SR.**
**INDIVIDUALLY**

_____


**WNGU, LLC**

_____.
RODOLFO PLASCENCIA, SR.
MANAGER

# INDEX TO ATTACHED EXHIBITS

**EXHIBIT "A"** – Legal description of the Alamo Elevator.

**EXHIBIT "B"** -  Legal description of the Adjacent Tract.

**EXHIBIT "C"** – Sworn Declaration of No Known Latent Defects

**EXHIBIT "D"** - Excluded Alamo Elevator Property"

**EXHIBIT "E"** - Order of dismissal with prejudice of the Adversary Proceeding

# EXHIBIT "A"
## [Legal Description of the Alamo Elevator]
[To be completed, certified, and attached by the Title Company at Closing]

# EXHIBIT "B"

Legal description of the Adjacent Tract.

[To be completed, certified, and attached by the Title Company at Closing]

# EXHIBIT "C"
## Sworn Declaration of No Known Latent Defects

## DECLARATION OF WNGU, LLC, RODOLFO PLASCENCIA, SR.AND RODOLFO PLASCENCIA, JR.

This Declaration is made on _____, 2025 by WNGU, LLC, Rodolfo Plascencia, Sr., and Rodolfo Plascencia, Jr. (collectively "You" or "Your" or "Our" or "Us") as their interests or positions appear, for the benefit of  Garcia Grain Company Plan Trust (the "Plan Trust") to induce the Plan Trust to execute the Compromise Settlement Agreement and Mutual Release of All Claims (the "Settlement Agreement") to which this form of Declaration is attached, and to accept, as part consideration thereof, the Alamo Grain Elevator without warranty, other than the warranty of title thereto.

WHEREAS to accomplish the Settlement Agreement between the Plan Trust and You and as an integral and material part thereof, this Declaration is made by You to induce the Closing of the Settlement Agreement as defined therein, under oath and based upon your good faith and honest assessment of the present condition of the Alamo Grain Elevator;  and

WHEREAS, the Alamo Grain Elevator is to be transferred to the Plan Trust under the Settlement Agreement and, to the best of Your informed knowledge, is in good operating condition and repair and as a result of Your operations of the Alamo Grain Elevator, and You did not discover any Latent Site Defects, nor did You observe any condition that would cause a reasonable and prudent operator to suspect that a Latent Site Defect exits;  and

THEREFORE, you make this declaration under penalty of perjury upon your personal knowledge to induce the Plan Trust to enter into the Settlement Agreement:

## I.      DECLARATIONS

1.      The Alamo Grain Elevator, including its structures and equipment (including communications equipment) used in the conduct of the Grain Storage Business are, insofar as known or observed by Us and to Our knowledge, (i)  are structurally sound with no known defects; or

2.      <u>as listed below in the Your Disclosures</u>), and, (ii)  none of such structures or equipment need maintenance or repairs except for ordinary, routine maintenance and repairs which are not material in nature or cost,  (iii)   sufficient for the operation of the businesses of the Plan trust as a grain elevator,  and (iv) in conformity with all applicable laws, ordinances, orders, regulations and other requirements, except where in each instance listed above the failure to conform could not reasonably be expected to have a material adverse effect on such operations, and except as listed below in Your Disclosures.

2.      To Our knowledge, the Alamo Elevator is structurally sound with no known observable or Latent Site Defects that have or could reasonably be expected to have a material adverse effect on its use, operations, or sale, except listed below in Your Disclosures.

3.      To Our knowledge, there are no known or suspected Latent Site Defects at or around the Alamo Elevator that would impede the Plan Trust from operations of the Alamo Grain Elevator or that create any serious threat to injury to the Alamo Grain Elevator, surrounding

structures or area or to persons in or around the Alamo Grain Elevator from such operations except as listed below in Your Disclosures below.

4.      To Our knowledge there are no known or suspected defects in the geology, hydrology or soil condition of the Alamo Grain Elevator real property and You have not received any notices from any insurance company or Governmental Authority of any defects or inadequacies in the Alamo Grain Elevator or real property, or any part thereof, which would materially and adversely affect the right to operations or the insurability of such property or cause an increase in the premiums for the insurance therefor, except as *listed below in Your Disclosures*.

5.      To Our knowledge, there have been no alterations to the exteriors of any of the buildings or other improvements on the Property or use of the Alamo Grain Elevator that would adversely impact title or rights of third parties or render any surveys or site plans provided to the Plan Trust materially inaccurate or otherwise reflect a material deficiency in title to such improvements or encroachments on the Alamo Grain Elevator property or encroachment by the Alamo Grain Elevator improvements on adjacent third-party property, except as *listed below in Your Disclosures*.

6.      To Our knowledge, the Fixtures and Personal Property are presently operating and have been regularly maintained and will be in the same working condition in all material respects as of the Closing Date and there are no known defects that have not been disclosed except as *listed below in Your Disclosures*.

## II.      DEFINITIONS

7.      The following definitions shall apply to Your Declaration and, as the case may be, to the Settlement Agreement to which this Declaration is attached.

a.      "Latent Site Defects" as used herein means any conditions or circumstances that (i)  are suspected by You, including observations from Your operations of the Alamo Grain Elevator, and (ii) were not Disclosed to the Plan Trust below, or disclosed by the Plan Trust Report furnished to You, and includes no known or suspected presence of any dangerous site conditions, material foundation defects, soil or water contamination, deterioration of metal, wood or other materials or structural supports.

b.      "To Our knowledge" as used herein means that You have not observed, nor have you suspected (as a result of Operations).

c.      "Suspect" or "Suspected" as used herein means You have not observed or intentionally ignored any condition of the Alamo Grain Elevator and real property that would cause a reasonable and prudent grain elevator operator to suspect that a Latent Site Defect may exits.

### III.    DISCLOSURES

8.    WNGU, LLC, Rodolfo Plascencia, Sr., and Rodolfo Plascencia, Jr. specifically disclose all material defective or suspected defective conditions of the Alamo Elevator and surrounding real property known to Us.   *See*, Exhibit "1" to this Declaration of the Disclosures, which Exhibit 1  is incorporated herein by reference as if set out in the ¶8 *verbatim* and for all purposes.

9.    The following Declaration and the Disclosures are made by each of Us and reflects all of our collective personal knowledge and all of the suspected knowledge as set out above.  We acknowledge that the Settlement Agreement and this Declaration shall be construed under the laws of the State of Texas and any disputes arising from this Declaration shall be filed exclusively in the Court as provided in the Settlement Agreement.   We do not intend that any provision of this Declaration conflict with the Settlement Agreement and acknowledge that this Declaration shall be construed to be consistent with the Settlement Agreement.

Dated the first date provided above.

**WNGU, LLC**

_____
By:  **Rodolfo Plascencia, Sr**., its owner and
Company Manager

_____
**Rodolfo Plascensia, Sr**.
In his individual capacity

_____
**Rodolfo Plascensia, Jr**., operations manager
and in his individual capacity

## ACKNOWLEDGEMENTS

**STATE OF TEXAS**

**COUNTY OF HIDALGO** }

  On this day personally appeared Rodolfo Plascencia, Sr., known to me, and as the managing member of WNGU, LLC, and upon his oath stated that he is the authorized manager and agent of WNGU, LLC and that the statements in the foregoing Declaration are true and correct to his personal knowledge.

SIGNED AND SWORN to this ____ day of _____, 2025, to witness my hand and seal of office.

             _____

             Notary Public in and for the State of Texas

**STATE OF TEXAS**

**COUNTY OF HIDALGO** }

  On this day personally appeared Rodolfo Plascencia, Sr., known to me, and upon his oath stated that the statements in the foregoing Declaration are true and correct to his personal knowledge.

SIGNED AND SWORN to this ____ day of _____, 2025, to witness my hand and seal of office.

             _____

             Notary Public in and for the State of Texas

**STATE OF TEXAS**

**}**

**COUNTY OF HIDALGO**

On this day personally appeared Rodolfo Plascencia, Jr., known to me, and upon his oath stated that the statements in the foregoing Declaration are true and correct to his personal knowledge.

SIGNED AND SWORN to this _____ day of _____, 2025, to witness my hand and seal of office.

_____

Notary Public in and for the State of Texas

Page 5 of 5
[Including Acknowledgments]
[Not including Exhibit "1" attached hereto]

Case 23-07002   Document 325-1   Filed in TXSB on 02/04/26   Page 23 of 29

# EXHIBIT "D"
## Excluded Alamo Elevator Property"

Inventory

Office Desk
Computer and monitor, 2 printers
5 Office chairs
Probe
2 Racks
1 File cabinet
1 Book shelve
1 Microwave
1 Refrigerator
Coffe Table
Office Supplies (paper, pens, staples, staples, gloves, tonner

New Holland Tractor
Mobile Grain Auger
John Deere Tractor and farm equipment - thitrd party
Stack of tote bags

# EXHIBIT "E"
## Order of Dismissal With Prejudice of the Adversary Proceeding

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GARCIA GRAIN TRADING CORP.,** | § | **CASE NO. 23-70028** |
| Debtor | § | **Chapter 11** |

_____

| | | |
|---|---|---|
| **GARCIA GRAIN TRADING CORP.,** | § | |
| Plaintiff, | § | |
| | § | **ADVERSARY NO. 23-07002** |
| **v.** | § | |
| | § | |
| **RODOLFO PLASCENCIA, SR., and** | § | |
| **WNGU PROPERTIES, LLC** | § | |
| Defendant | § | |

_____

## ORDER APPROVING FINAL SETTLEMENT AGREEMENT

Came on for hearing in this Adversary Proceeding the Plaintiff's Motion to Determine and Enforce Compromise Settlement Agreement and Disclosure of All Defects [Dkt #313] (the "Motion") (herein collectively Plaintiff and Defendants are referred to as the "Parties" and separately a "Party") and upon the Parties' announcement of an agreed form of final Settlement Agreement and agreed form of Declaration of Defendants, and counsel for the Parties' statements in support of the agreed form of Settlement Agreement attached hereto as Exhibit 1 ("Final Settlement Agreement") and the agreed form of Defendants' Declaration attached hereto as Exhibit 2 ("Final Defendants' Sworn Declaration") the Court finds as follows:

This Court has subject matter jurisdiction and in personam jurisdiction over this dispute and over the Parties;

The Parties have consented to this Court's entry of a final order resolving all issues in this Adversary Proceeding;

Plaintiff has settled its dispute with Defendants following a mediation of all parties;

Following a mediation the Parties entered into a written, signed, preliminary mediated agreement terms [Dkt #286] (the "Mediated Settlement Terms") which contemplated a more comprehensive and final Settlement Agreement (the "Final Settlement Agreement");

In furtherance of a final settlement agreement the Plaintiff and Defendants exchanged several drafts of a proposed final settlement agreement;

Plaintiff exercised its right under the Agreement to inspect the elevator and retained an engineer to access the condition of the elevator which, however, upon such inspection one silo contained a significant amount of grain which prevented the finality of the inspection as the inspection required an empty silos;

As a result of the incomplete inspection, disputes arouse about the viability of the settlement;

In response to Plaintiff's dispute and claims, Plaintiff filed a Motion to Enforce [Dkt #313] an attached version of a Settlement Agreement and Defendants' Sworn Declaration that were not agreeable to the Defendants; and

The Parties have announced that the agreed Final Settlement Agreement in form attached hereto as Exhibit "1" and the Final Defendants' Sworn Declaration in form attached hereto as Exhibit "2" and agreed by the Parties and requested by the Parties to be approved and, accordingly, the Court finds good cause exists for this Court to order that the Final Settlement Agreement among the Parties is attached to this Order as Exhibit "1" including the sworn Declaration of Defendants as part of the Exhibits "A", "B", "C", "D" and "E", which Exhibit "D" is attached hereto as Exhibit "2", be and hereby are approved in all things, providing all rights of the Parties to this Final Settlement Agreement are reserved and any further dispute between the Parties regarding damages

or for the breach or performance of the Final Settlement Agreement, if any, shall be resolved as set out in the Final Settlement Agreement as ordered below.  Accordingly, it is hereby

ORDERED that the Final Settlement Agreement of the Parties is attached hereto and reflected in Exhibit "1" for all purposes; and it is further

ORDERED that the Final Defendants Sworn Declaration as Exhibit D to the Final Settlement Agreement is attached hereto and reflected in Exhibit "2" for all purposes; and it is further

ORDERED that the Parties have preserved and reserved all rights, privileges, and the Parties' Claims any Party may have, if any, arising in or related to the Agreements of the Parties, including for breach of the Agreement of the Parties, or any other contract or tort claim that could arise from the entering into the Agreement of the Parties, if any, and further have preserved and reserved the right to demand arbitration as set out in the Agreement of the Parties; and it is further

ORDERED that the Parties shall execute all Settlement Documents, including Exhibit "1" and Exhibit "2" attached hereto and shall attend in person or remotely a closing of the settlement of the Parties not later than 10 business days from the date of this Order, at which time the Parties shall exchange (i) a special warranty deed and good title to the Alamo Elevator in the name of the Plaintiff Plan Trustee on behalf of the Plan Trust and showing the transfer of good and sufficient legal and equitable title; (ii) for the release of the Plaintiff's *lis pendins* in recordable form now on file regarding the Adjacent Tract (also known as "Tract 2");  and it is further

ORDERED that all Parties shall execute such other and further documents, including Exhibits attached or to be attached to Exhibit "1" and Exhibit "2" as necessary to perform the Settlement Agreement of the Parties, and including the signing of the mutual releases of all claims attached to the Agreement of the Parties,  releasing all claims save and except those rights to make

certain claims in arbitration and any other Parties Claims, if any, for breach of performance of the

Settlement Agreement or as provided in the Final Settlement Agreement;  and it is further

      ORDERED that all relief sought by any Party not expressly granted herein is hereby

denied.

SIGNED_____

                                        _____
                                        Eduardo V. Rodriguez
                                        Chief United States Bankruptcy Judge